Argued January 10, decided February 4, 1908.

## MAGONE *v.* PORTLAND MFG. CO.

[93 Pac. 450.]

MASTER.AND SERVANT—DUTY OF MASTER—WARNING—MINORS.

1. Where the dangers of an employment are visible, so that any man of ordinary intelligence could not fail to see and comprehend them, an employer is under no obligation to warn the servant of their existence; but if the employee is a minor, who because of his immature age, inexperience, or want of comprehension does not appreciate the danger, though it is open and apparent, it is the duty of the employer to caution him of it, and instruct him how to avoid it.

SAME—CARE REQUIRED OF A MINOR—ASSUMPTION OF RISK.

2. Care and caution of a minor to avoid danger can only be required to the extent that the danger is appreciated by him, and the assumption by a minor of the risks of an employment is commensurate with his age, experience, and capacity.

SAME—ACTIONS FOR INJURIES—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE OF MINOR.

3. Whether a servant, a minor, was negligent in putting his hand under certain knives of a machine while it was not in motion, *held*, under the evidence, for the jury.

SAME—EFFECT OF CIRCUMSTANCE.

4. Where an employee's work requires haste, and his whole energy and attention is absorbed in performing it, he is not conclusively presumed to have a particular danger incident to his work constantly in mind, and the care and attention required may depend upon the facts of the particular case, so that whether they are such as to excuse him from the degree of care and thoughtfulness ordinarily required will become a question of fact for the jury.

SAME—SUFFICIENCY OF WARNING.

5. Whether a servant, a minor, was sufficiently warned of the dangers of his employment at a certain machine, *held*, under the evidence, for the jury.

From Multnomah: ALFRED F. SEARS, Judge.

Statement by MR. JUSTICE EAKIN.

Plaintiff, by his guardian *ad litem,* brought this action to recover damages for personal injuries. From a judgment for plaintiff, defendant appeals. Defendant is a corporation operating a mill at St. Johns, Or., for the manufacture of the material for boxes, baskets, furniture, etc, by the use of various machines operated by steam power. The particular machine by which plaintiff was injured consists of two stationary knives set opposite each other, with the edges downward, about 18 inches long and 6 inches apart, to cut stock for grape baskets, the stock being fed to the knives upon a movable table pressed up against them, which is operated automatically when the machine is in motion. When cut the finished stock is crowded up between the knives and removed by hand from above, the exposed stock being about 18 inches above the edge of the knives. The machine is operated intermittently at the will of the operator, being stopped to place a fresh supply of material on the table, viz., 25 or 30 thicknesses at a time, which would take, plaintiff says, "two or three minutes"; another witness says "six or seven minutes"—and then the machine is set in motion, and continues so until such material is all cut. When the table is down, the space between it and the knives is about 6 inches.

Plaintiff's duty at this machine was to carry away the finished stock from above the knives and place it upon tables situated from a few feet to 15 feet away; and when the machine was stopped for the reloading of the table, his duty was to pick up from the floor the culls and waste with a fork and load them upon a wheelbarrow and take them to the engine, about 50 feet away —plaintiff's position being on the opposite side of the machine from the operator—and it kept him very busy. He says:

"Why, I had to take the stuff, and run over to one table, and then run back again to get it; had to hurry, it piled up so quick there at the machine."

Plaintiff went to work at this machine for the first time about 10 o'clock on the morning of the injury, and as the machine was stopped for the reloading of the table he would put his hand up under the knives to push up the stock that could not be reached from above. When asked why he put his hand up under the knives he said:

"Well, I put my hand under the knives, because whenever the machines stopped—after it stopped—I would put my hand under the knives to get out the place for a distance of about eighteen inches, and then I would go and clean up these here culls over the floor. I have to keep the waste from the machine, and when the machine would start up I would get back there in time. I would hear the machine start up and get back in time before the machine would run over—the culls would run over—not the culls, but the stock, would run over the top and fall on the floor. I wanted to get back in time that way. Well, I would have more time that way. If I didn't do that, why then I would have to keep watching the machine so close I could not clean up the floor. I could not go far enough away. So I would clean up that, and I would not have to be watching the machine all the time while I went to clean up the floor, and as soon as I would hear the machine start to going then I would go back and be there in plenty of time."

In another answer he says: "Well, it was all I could do to keep up with it. I could hardly keep up with it. There was so much stuff." He had been at work at this machine only about three-fourths of an hour when he again put his hand under the knives to remove the stock between them, and the machine was started, as he describes it: "When I went to get it out that time I was shoving it up through. I don't know whether I got it all out or not that time. The machine came right down and took my hand away. It hit so I didn't know it was off." Then again he says that it started up

quicker that time than before; that it generally waits a minute or two, but that time it started a good deal quicker—in about 15 seconds.

Plaintiff was about 16 years and 3 months old at the time of the injury. He was in the sixth grade in the public school. Previous to this time he had lived about four years in Sellwood, and then about two years in St. Johns. The only experience he had had in any kind of work prior to his employment by defendant on January 19, 1906, was about a month in a shingle mill helping to fix some concrete and assisting to clean trash out of the conveyor, and a little while in a brickyard wheeling soft brick. The accident occurred on the 13th of February, 1906. Prior to the morning of the accident he was off-bearer from a jointer, a machine consisting of one long knife, the material from which was received by the plaintiff directly from the knife. On the day he first went to work for defendant he was told by Oberg, the operator of the jointer, to "be careful of the knives," and at the time of the motion for the nonsuit there was no evidence of any other or different warning or caution given to plaintiff at any time.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. Ralph W. Wilbur.*

For respondent there was a brief with oral arguments by *Mr. Richard W. Montague* and *Mr. Walter H. Stivers.*

MR. JUSTICE EAKIN delivered the opinion of the court.

The negligence of the defendant, alleged and relied upon by the plaintiff as the basis of recovery, is that the defendant carelessly and negligently failed and neglected to caution or warn plaintiff of the dangerous character of the said machine, and by reason of plaintiff's immaturity and inexperience he did not comprehend or appreciate the danger, and this is denied by the answer. And it further sets up the affirmative defense of contributory negligence that plaintiff knew of the danger, and that

the injury was the result of want of care on the part of himself or of a fellow servant.   Upon the trial at the close of plaintiff's evidence defendant moved the court for nonsuit (1) for the reason that there was no evidence to show any negligence on the part of defendant; (2) that it appears that defendant was guilty o: contributory negligence; (3) that plaintiff assumed the risks of his employment; and (4) that the injury was the result of the negligence of a fellow servant.   The motion was denied by the court, and a verdict rendered for the plaintiff, and the alleged error of the court in denying the motion for the nonsuit is the only question submitted on the appeal.

1. The general rule as to the duty of the master to warn the servant of the dangers incident to the employment is laid down by 4 Thompson, Law of Neg. § 4061, as follows:

"The master owes no such legal duty to the servant in respect to dangers which are open, visible, and obvious ಬ the comprehension of the servant, considering his years, experience, and understanding.   In the case of an adult servant of sound mind, the rule is understood to be that, where the dangers of the employment are visible, so that any man of ordinary intelligence, though not an expert, could not fail to see and comprehend them, an employer is under no legal obligation to warn the servant of their existence; but in the cases of infants, as we shall hereafter see, the rule is to be applied with reference to their inexperience and want of comprehension."

2. The question here is whether the age, experience, and comprehension of plaintiff was such as to render the danger open, visible, and obvious to him; that is, whether it was a matter of law or a question of fact and law for the jury under proper instructions.   It is settled in this State that care and caution to avoid danger can be required of a minor to the extent only that such danger is appreciated by him, taking into consideration his age, experience, and comprehension of it.   The assumption by the minor of the risks incident to the employment is

commensurate with his age, experience, and capacity: *Mundhenke* v. *Oregon C. Mfg. Co.* 47 Or. 127 (8 Pac. 977: 1 L. R. A. (N. S.) 278; *Westman* v. *Wind R. Lum. Co.* 50 Or. 137 (91 Pac. 478) ; *Greenway* v. *Conroy et al.* 160 Pa. 185 (28 Atl. 692: 40 Am. St. Rep. 715). In *Mundhenke* v. *Oregon C. Mfg. Co., supra,* Mr. Chief Justice WOLVERTON says:

"It has been determined by this court that only such care and caution to avoid the dangers of accident can be expected or required of a person of immature age as is common to other persons of his years of prudence, forethought, and discretion. * * This must necessarily be so, because infancy and youth spring into manhood and maturity by degrees only, and responsibility develops accordingly."

In *MacDonald* v. *O'Reilly,* 45 Or. 589, 599 (78 Pac. 573), a case of an infant of tender years, and the liability not arising between master and servant. Mr. Justice BEAN says:

"There has been a time in the life of every person of mature judgment, as all agree, when he was incapable of exercising the care and judgment necessary to avoid or avert danger, and was *non sui juris.* There is a time also when he is in law an adult, and responsible as such. Between these two periods is a transition stage, during which his capacity is a matter of fact for the jury."

In *Westman* v. *Wind R. Lum. Co.* 50 Or. 137 (91 Pac. 478, 480), Mr. Chief Justice BEAN says:

"It was defendant's duty, therefore, to point out or give him notice of the danger incident to his employment and the risks attending the same, * * unless they were so open and apparent that one of his age, experience, and capacity, in the exercise of ordinary care and prudence, should know and appreciate them to the same extent as an adult; and that was a question for the jury."

These authorities lead to the inevitable conclusion that, if the minor, by reason of immature age, inexperience, or want of comprehension, does not appreciate

the danger, although it is open and apparent, then it is the duty of the master to caution him of it, and instruct him how to avoid it: 4 Thompson, Law of Neg. §§ 4092-4093; *Bohn Mfg. Co.* v. *Erickson,* 55 Fed. 943 (5 C. C. A. 341).

3. The danger of risk which plaintiff incurred was not his contact with machinery in operation. In that it differs from most of the cases on this question. His was the risk of being surprised by the machine starting prematurely. Aside from the question of the carelessness of a fellow servant that this suggests, it also has to do with the charge of contributory negligence by plaintiff. When he placed his hand under the knife, the machine was at rest and harmless, except for the danger of its starting unawares. He had previously noted that it took a certain time to reload the table, and was acting upon the presumption that such stops would continue uniform. He was rushed with his work, and absorbed with the one thought of keeping up with it, attempting to economize his time. Under these circumstances we are not justified in saying that as a matter of law such act was contributory negligence on his part: *Dowling* v. *Allen & Co.* 74 Mo. 13 (41 Am. Rep. 298). It is a question of fact and law for the jury, under proper instructions, to say whether the danger was open, visible, and obvious to plaintiff, considering his age, experience, and capacity. The defendant urges that, because the plaintiff knew if he got his hand under the knives while the machine was running it would be hurt; that, therefore, it was negligence for him to put his hand in the machine; and that he is thereby precluded from recovery. His testimony upon this matter is as follows:

"Q. Didn't you know if you put your hand under there and it started it would cut your hand off?

A. Yes; if it would start up, I knew it would get my hand.

Q. Well, why did you do it?

A. Well, I didn't suppose it would start up so quick. I didn't think about that. I was thinking about getting the stuff out o there the shortest time. I was thinking of getting the stuff out of the machine so I could get that off of the floor. I wasn't thinking much about the knives. I was thinking of just keeping up with the work."

Where plaintiff's work required haste, and his whole energy and attention was absorbed in performing it, he is not conclusively presumed to have constantly in mind a particular danger incident to his work. The care and attention required of an employee while working about dangerous machinery may depend upon the facts of the particular case—whether they were such as to excuse him from that degree of care and thoughtfulness, which a prudent man would ordinarily exercise. Whether in such a case the injured party was guilty of contributory negligence is a question of fact for the jury. In *Viohl* v. *N. P. Lum. Co.* 46 Or. 297, 301 (80 Pac. 112), Mr. Justice BEAN says:

"Indeed, in an action against a master to recover damages for an injury to a servant, due to the negligence of the former, the question of contributory negligence on the part of the injured party is ordinarily a question of fact in all cases. * * It is not declared as a matter of law in any case, unless the danger was not only avoidable if the servant had acted prudently, but also such as no prudent man would have incurred. Mere knowledge of the danger is not conclusive of negligence in failing to avoid it. A servant's knowledge and his voluntary exposure to the danger are probative facts from which the ultimate fact of negligence must be determined, but they are not conclusive."

See, also, *Nosler* v. *Coos B. R. Co.* 39 Or. 331 (64 Pac. 644) ; *Roth* v. *N. P. Lum. Co.* 18 Or. 205 (22 Pac. 842) ; *Johnston* v. *O. S. L. Ry. Co.* 23 Or. 94 (31 Pac. 283). In the latter case the danger was open and visible, and the question of contributory negligence was held to be for the jury, and a nonsuit was set aside.

5. Defendant insists, however, that plaintiff was duly warned o. the danger, and, therefore, it was not at fault. The only warning was that given on the 19th day of January, the day he began work for the defendant, not by the superintendent, or foreman of the defendant, but by a fellow workman. He says: "Mr. Oberg kind of warned me from the machine." He said: "Be careful of the knives." This referred to the jointer. It was more than three weeks later when he went to work at the machine in which he was injured. It was operated intermittently, and this was apparently what misled the plaintiff. He had been shown how to take hold of the stock in carrying it away to avoid dropping it; but there was no reference in such instructions to the dangers incident to the work. 4 Thompson, Law of Neg. § 4093, says:

"The master is here, as in every other case, bound to act reasonably and justly; and this rule requires him to give suitable warning and instructions to a minor employee in regard to any danger, whether open or concealed, where the danger is not sufficiently obvious to the intelligence or experience of the employee in the exercise of ordinary care on his part; this care being measured by the maturity of his faculties and the amount of his experience."

And he further says that the warning should be graduated to the youth, ignorance, and inexperience of a minor. In *Coombs* v. *New Bedford Cordage Co.* 102 Mass. 572 (3 Am. Rep. 506), in the case of a boy, 14 years of age, the dangers of the machinery were open and apparent, and it was held that whether the boy appreciated the danger, and whether the defendant had given him sufficient or reasonable notice of it, were questions for the jury. And on the second appeal (at page 596 of 102 Mass.: 3 Am. Rep. 506) the court held that the notice of the nature of the risk to be given by an employer to a minor must be such as will enable a person of his youth and inexperience in business intelli-

gently to appreciate the nature of the danger attending its performance; and it is held that this is a question of fact for the jury. To the same effect was *King* v. *Lum. Co.* 93 Mich. 172 (53 N. W. 10) ; *Bohn Mfg. Co.* v. *Erickson,* 55 Fed. 943 (5 C. C. A. 341). The work of plaintiff in the manner of its execution at the machine where he was injured in no manner resembled the work at the jointer. The machine was already in motion when the plaintiff was called to off-bear from it. Whether he should have been cautioned to keep entirely away from the knives, even when not in operation or as to the irregularity of its operation, or otherwise impressed with the dangers of the situation, depended upon plaintiff's capacity to appreciate it. Whatever was required to fix in his mind the risk to which his work was incident, is the measure of defendant's duty. It is said by Mr. Justice McGRAFF, in *King* v. *Lum. Co.* 93 Mich. 173 (53 N. W. 10) :

"In determining the question of the sufficiency of the notice it is proper and necessary to take into consideration, not only the plaintiff's youth and inexperience, but also the nature of the service, and the degree to which his attention while at work would need to be devoted to its performance."

As we have seen that the extent of his capacity is a matter for the jury, it is also for them to determine from the whole case whether the notice given was sufficient or reasonable to enable plaintiff to appreciate the danger.

Therefore the motion for the nonsuit was properly denied, and the judgment is affirmed.        AFFIRMED.