DOCK ROBINSON, Appellee, v. R. O. MEEK, Appellant.

**PLEADING**: Issues, Proof, and Variance—Similar Representation. An
1   allegation that a representation was that a doctor's charge "would not exceed $10" is properly met by proof that the representation was that the said charge "would be about $10." (See Book of Anno., Vol. I, Sec. 11177.)

**RELEASE**: Fraud—Jury Question. A jury question as to the validity
2   of a release of personal injury damages is made by proof that the

releasee represented that the doctor's charges would be "about" $10, and that the representation was materially false, and was made to the releasor and acted on by him when he was alone and practically helpless from his injuries.

Headnote 1: 31 Cyc. pp. 701, 703. Headnote 2: 34 Cyc. pp. 1105, 1106.

*Appeal from Black Hawk District Court.*—E. B. STILES, Judge.

NOVEMBER 16, 1926.

REHEARING DENIED FEBRUARY 19, 1927.

Action for personal injuries resulting from an automobile collision. The defense was a general denial and a plea of compromise and settlement. The reply pleaded fraud, in avoidance of the settlement. There was a verdict and judgment for the plaintiff, and the defendant appeals.—*Affirmed.*

*Mears & Lovejoy* and *C. C. Putnam,* for appellant.

*Reed, Tuthill & Reed,* for appellee.

EVANS, J.—I. The accident in question happened at 5:15 P. M. on October 21st, at the intersection of Independence and Irving Streets in the city of Waterloo. Independence is an east and west street, and Irving is a north and south street. Both parties were traveling on Independence Street,—the plaintiff going east, and the defendant going west. The plaintiff rode a bicycle, and the defendant drove an automobile. The defendant approached Irving Street from the east, and turned south on Irving. The plaintiff approached Irving Street from the west, and proceeded on Independence Street across Irving Street. He had nearly crossed the intersection with Irving Street when the collision occurred. His claim is that the defendant, in turning from Independence Street into Irving, cut the southeast corner of the intersection, and failed to keep to the right of the center of the intersection. The collision occurred at the southeast corner of the intersection. The automobile struck the plaintiff and ran over him for its full length. He was picked up ten feet behind the automobile. Both bones of his left leg were broken near the ankle. The fracture was compound,—the

broken bones protruding through the skin of the leg above the ankle. He suffered injuries to the head and shoulders and wrist, also. He was taken to the hospital, and came under the care of a physician. The settlement pleaded by the defendant was had at this hospital on the evening of October 23d. The contract of

1. PLEADING: issues, proof, and variance: similar representation.

settlement was procured by the agent of an insuring company. The fraud pleaded in avoidance was that the settlement was obtained from the plaintiff under a condition of helplessness on his part, and by false representations made by the agent to him. The petition charged these representations to be that the doctor's charges incurred would not exceed $10, and that his hospital bill would be $5.00 a day for three or four days. The evidence was that the agent said to the plaintiff that the doctor's charge would "be about $10." The grounds of appeal presented by the defendant, as appellant, are concentrated upon this evidence. Two points are raised: (1) That there is a fatal variance between evidence and pleading; (2) that the alleged false representations testified to were mere expressions of opinion, and furnished no actionable basis.

As to the first proposition, the petition alleged that the agent represented that the doctor's bill would "not exceed $10." The evidence in support of this allegation was as already stated. Was the variance necessarily material? That question depends upon still other evidence. If the doctor's bill had been in fact $10 or less, the variance would be clearly immaterial. If the doctor's bill had been approximately $10, but slightly in excess thereof, the variance might be deemed material. At the time this representation was made, the doctor's bill amounted in fact to $64. For the purpose of this case, therefore, we think that a statement that the doctor's bill would "not exceed $10," and a statement that it was "about $10," amount to the same thing, and present no material variance. The fact that the court submitted the issue to the jury as it was pleaded, rather than as it was proved by the testimony, could not work any prejudice, in view of the fact that both statements were so nearly identical, as compared with the true fact. We hold, therefore, that this assignment of error is not available to the appellant.

II. The question whether the statements proved, constituted false representations, within the meaning of the law, is

more difficult, and involves a consideration of evidence other
than the representations themselves. If the evi-
2. RELEASE:       dence of the representations stood alone, un-
fraud: jury
question.        aided by the circumstances under which they
were made, we should hesitate to hold them sufficient. The
plaintiff is a colored man, reared in Arkansas, and brought to
Waterloo by his employer a year or two before the accident.
His education was limited, but he was able to read and write in
some degree, and was an intelligent and industrious laborer,
who commanded a wage of $5.00 a day at a particular job for
the round year. The fracture of his leg was a very serious
injury. It was some days before the doctor was able to get a
successful reduction thereof. We purport only to recite facts
which plaintiff's evidence tended fairly to prove. The defend-
ant, Meek, called to see the plaintiff on his first evening at the
hospital, which was Tuesday. He assured him at that time that
his expenses would be cared for. On Thursday evening, he
came again, bringing with him the insurance agent. They came
without any previous appointment, and without any declared
purpose. The conversation in the first instance was the casual
conversation of visitors. The plaintiff was suffering great pain.
His leg was in a splint, and was held in an elevated position,
from which a weight was suspended over a pulley. His head
had been injured, and he was suffering from great headache
and from roaring in his head. Sleeping tablets had been admin-
istered to him, and a "shot in the arm." This was his physical
condition. He had no one present to advise or assist him. He
had no warning that he would need any advice or assistance.
The conversation was one-sided. The defendant assured him
that his expenses would all be cared for. He appears to have
been appreciative of defendant's solicitude. The record dis-
closes that the plaintiff assented to everything that was said or
proposed to him. After making the representations testified to,
the agent said to him, "I will give you $125. Will that be all
right?" The plaintiff answered, "I guess so." The agent im-
mediately wrote out the contract of settlement. When he found
that the plaintiff could not read it, because of his condition, he
read it to him. The plaintiff testified that he could not under-
stand him because he read so fast. The settlement appears to
have been accomplished in a very brief time. No objection was

made by plaintiff to the offer; no counter proposition was sug-
gested by him. The agent executed the check, and left it upon
a little table at the side of plaintiff's bed, and directed him to
give it to his wife in the morning. This he did. It does not
appear that a copy of the contract was left with him. Shortly
thereafter, and after he had opportunity to obtain advice, he
purported to rescind the settlement, and served notice accord-
ingly, and tendered the return of the money. The plaintiff
testified concerning the representations as follows:

"When the insurance adjuster and Mr. Meek first came out
to the hospital that night, they asked me how the accident hap-
pened, and I told them, as near as I could, and he finally asked
me about $125. He said the doctor charged me about $10 for
setting a leg, *and I would be in the hospital three or four days,*
and that would be about $5.00 a day. Then I would be ready
to go home; and he asked me again about $125, and I told him
I reckoned so. * * * Q. Did the insurance adjuster read it to
you? A. Yes, sir; he read it so fast, and did not talk very
loud, and I could not understand what he said. I did not under-
stand what he said, because I had such an awful headache and
roaring in the head; and I had been given some rest tablets by
the doctor, and the sister gave me a shot in the arm; and I did
not understand what he said."

The doctor's bill incurred up to the time of the trial amount-
ed to $507, and the hospital bill to $215. The plaintiff had not
yet recovered, and had no prospects of recovery within less than
two or three months. The trial was had about six months after
the accident. It is evident from the foregoing that the plaintiff
was under a considerable degree of disability, and that he was
not in a condition to transact important business or to protect
himself in the proposed settlement. His condition was neces-
sarily apparent to the parties dealing with him. Though the
contents of the writing were read to him, they were read so
rapidly that he could not understand the same. He did under-
stand the conversation preceding, but there was nothing said
in that conversation to indicate that there was to be a writing.
Nor was anything said in the conversation which would advise
him that the acceptance of $125 would be an absolute bar against
his demanding more, in case his doctor's bill and hospital bill
exceeded the amount pressed upon him by the agent. On the

contrary, the defendant assured him that his expenses would be cared for. The helpless condition of the plaintiff was pleaded in the reply, as an incident of the fraud. Without holding that the mere representations herein set forth were of themselves sufficient to impeach this settlement, if they had been made under different circumstances from those indicated herein, we reach the conclusion that the question of fraud and fraudulent representations, in the light of plaintiff's then physical and mental condition and capacity, was fairly one for the jury.. In *Kilmartin v. Chicago, B. & Q. R. Co.*, 137 Iowa 64, wherein we sustained the settlement, we said (pages 70 and 71) :

"Settlements made with an injured party by a claim agent of a railroad, who is rushed to the scene, and who deals with the injured person before he has had time to realize what he has suffered, or is likely to suffer, and without opportunity for consultation, may well be looked upon with suspicion; but in this case we think there is no evidence of fraud or imposition."

In *Kilby v. Charles City W. R. Co.*, 191 Iowa 926, we said:

"This is not a case where an adjuster for a company rushes to a recently injured party, and hastily secures a settlement, without giving the injured party opportunity for reflection or to obtain counsel. * * * The amount of the settlement was not unsubstantial or trivial, and not such as to shock the conscience or be indicative of fraud."

The foregoing statements are quite descriptive of the situation in the case at bar. No other assignment of error is argued than the foregoing.

The judgment below must be affirmed.—*Affirmed.*

DE GRAFF, C. J., and ALBERT and MORLING, JJ., concur.