Argued April 5; reversed May 9, 1933

# PARKER *v.* NORTON ET AL.
### (21 P. (2d) 790)

*H. B. Beckett* and *Erskine Wood,* both of Portland (Raffety & Pickett and Wilbur, Beckett & Oppenheimer, of Portland, on the brief), for appellants.

*B. A. Green,* of Portland (R. K. Powell, of Portland, on the brief), for respondents.

BELT, J. This is an action to recover damages for personal injuries sustained while the plaintiff was engaged as a stevedore in piling boxes of tin on a dock operated by the defendant, The Pacific Ports Service Corporation, on the water front of the city of Portland. The individual defendants, with the exception of John D. Nash, are copartners operating as steamship agents under the firm name of Norton, Lilly & Company. Nash was a foreman employed by the Pacific Ports Service Corporation. Plaintiff alleges that at time of injury he was employed by both The Pacific Ports Service Corporation and Norton, Lilly & Company.

It was the business of plaintiff to repile boxes of tin as they were unloaded on dock from ship for delivery to the American Can Company. These boxes were approximately 31 inches long, 28 inches wide, and 1¾ inches thick, each weighing about 240 pounds. The boxes were piled twelve high. Plaintiff was aided in

the work of repiling the boxes of tin by a man in the employ of the American Can Company. Longshoremen's hooks were used by the plaintiff and his fellow servant in piling the boxes. In carrying on the work each workman would insert his hook under the wire on his side of the box, pull it forward a few inches in order to get a good handhold and then, with one hand grasping the front end of the box and with the other hand using the hook on the back of the box, it would be lifted and put in place on the pile. After plaintiff, an inexperienced workman, had been engaged in this work for about an hour and a half, his hook slipped out from the wire on one of the boxes, and the point of the hook struck him in the left eye resulting in its complete loss.

There are numerous charges of negligence but the gravamen of the complaint is that the defendants furnished plaintiff with a defective hook with which to carry on his work and that, although they knew he was an inexperienced workman, they failed and neglected to warn and instruct him as to the dangers involved.

The Pacific Ports Service Corporation filed a separate answer admitting that the plaintiff was in its employ but denying all charges of negligence. As a first affirmative defense it was alleged that plaintiff was guilty of contributory negligence. As a second further and separate defense it alleged that, on the 30th day of December, 1929, it entered into a contract of settlement with the plaintiff in which it agreed to pay plaintiff all sums of money and other benefits to which he would have been entitled had both he and the company been under the provisions of the state Workmen's Compensation Act, and that, in consideration for the

payment made and to be made thereunder the plaintiff released and discharged the defendant company from all further liability on account of the accident.

The plaintiff, in his first further and separate reply to the answer of the Pacific Ports Service Corporation, alleged that the defendant was engaged in a work involving a risk or danger and that it had rejected the Workmen's Compensation Act of the state of Oregon. The defendant company moved to strike these allegations on the ground that they were sham, frivolous and irrelevant, but the motion was denied. For a second further and separate reply to the answer, plaintiff alleged, in substance, that the contract of settlement was procured through the fraud of the defendant and the Zurich Insurance Company which carried a policy of liability insurance indemnifying the defendant. Plaintiff alleged that the contract of settlement was represented to him to be merely a receipt for $35.70 paid to him for the temporary support of plaintiff and his family but that, on account of his weakened physical and mental condition, he did not understand and appreciate that the instrument which he executed was in fact a contract of settlement. Defendant moved to strike all allegations in reference to the matter of insurance but this motion was also denied. For a third further and separate reply to the answer, plaintiff alleged that at the time the settlement was negotiated he was mentally incompetent to make a contract and that there was no meeting of minds on the matter of settlement.

The individual defendants comprising the copartnership of Norton, Lilly & Compnay and the defendant John D. Nash filed an answer denying that the plaintiff was in their employ and that they were guilty of any negligence. As a further and separate answer and

defense the defendants charged the plaintiff with contributory negligence. To this answer the plaintiff replied, reiterating his charges that he was employed jointly by Norton, Lilly & Company and the Pacific Ports Service Corporation and that the answering defendants had rejected the provisions of the Workmen's Compensation Act of the state of Oregon.

On the issues thus stated the cause was submitted to a jury and a verdict returned in favor of the plaintiff and against the defendants, with the exception of John D. Nash, for the sum of $50,000.

Under the state of the record, we think it was not improper for plaintiff to plead in his reply that the contract of settlement was procured through the fraud of the defendant corporation and its indemnitor, the Zurich Insurance Company. It is competent to show that defendant carried liability insurance when such fact tends to prove any material issue in the case. If it was relevant, the mere fact that it might tend to prejudice the defense would not be ground to exclude such fact from consideration of the jury: *Steinman v. Brownfield,* (Mo.) 18 S. W. (2d) 528; *Paepke v. Stadelman,* 222 Mo. App. 346 (300 S. W. 845). Defendants sought to defeat the cause of the plaintiff by reason of the contract of settlement and release. When plaintiff replied that such contract was procured through fraud, it was proper to show all of the facts and circumstances surrounding its execution. Plaintiff asserts that he was induced to sign the release by reason of the alleged representations of the attorney for the insurance company that such instrument was only a receipt. Under such circumstances, plaintiff certainly had the right to show the interest of the party making such representation and for whom he was acting: *Bennett v. City of Portland,* 124 Or. 691 (265 P. 433);

*Kitchel v. Gallagher,* 126 Or. 373 (270 P. 488). The mere fact that an insurance company was involved need not, under such circumstances, cause the plaintiff to proceed with "bated breath". He is entitled to show the facts. When it was shown that the attorney was acting for the Zurich Insurance Company, it was deemed necessary for the defendant corporation to amend its answer to conform to the facts and it later introduced the policy of insurance in order to rely upon the contract of release and settlement.

 Assuming that it was error to refuse to strike from the reply the allegations in reference to insurance, if appellants desired to predicate error on such ruling they should have made objection to the introduction of any testimony in reference thereto, which, in the instant case, they failed to do: *Henderson v. Rice,* 160 S. C. 307 (158 S. E. 258). Appellant cannot on appeal assume a position inconsistent with his attitude in the trial court. Furthermore, when defendant Pacific Ports Service Corporation filed its amended answer during the course of the trial, alleging, in effect, that it had "caused an insurance company to agree" with plaintiff in reference to the matter of settlement and plaintiff had filed its amended reply thereto, it should have, on the authority of *Riggs v. New Jersey Fidelity & Plate Glass Co.,* 126 Or. 404 (270 P. 479), renewed its motion to strike the matter of insurance from such pleading if it desired to assign as error the denial of its motion to strike from the original reply.

The right of the plaintiff to plead in his reply that a release which is set forth as a defense was procured through the fraud of the insurance company has been recognized in numerous cases. See *Brennecke v. Ganahl Lumber Co.* (Mo.), 44 S. W. (2d) 627; *State ex rel. Brown v. Trimble,* 324 Mo. 353 (23 S. W. (2d) 162);

*Robinson v. Meek,* 203 Iowa 185 (210 N. W. 762). It may be said, without intending any criticism of counsel for appellant, that the matter of insurance was primarily injected into the case when the release was pleaded, for it necessarily followed that the plaintiff would be entitled to show the relationship of the parties. When the insurance policy was introduced in evidence by the defendant corporation, it disclosed that it also covered the defendants comprising the firm of Norton, Lilly & Co., and it will be borne in mind that one of the issues of the case was in reference to the employment of the plaintiff.

Appellants cite *Vasquez v. Pettit,* 74 Or. 496 (145 P. 1066, Ann. Cas. 1917A, 439); *Rosumny v. Marks,* 118 Or. 248 (246 P. 723); and *Ross v. Willamette Valley Transfer Co.,* 119 Or. 395 (248 P. 1088), as authority for the proposition that it is prejudicial error to inject the question of indemnity insurance into personal injury actions, but we think these cases have no application to the facts of this case since they did not involve alleged fraudulent releases.

■ The trial court should have sustained appellants' motions to strike from plaintiff's reply the allegations concerning the rejection of the Workmen's Compensation Act: *Olds v. Olds,* 88 Or. 209 (171 P. 1046); *Garvin v. Western Cooperage Co.,* 94 Or. 487 (184 P. 555), but such error was not prejudicial in view of the defense that plaintiff had entered into a contract of release whereby he had agreed to accept compensation equal to that he would have received "had both the employer and the employee been contributors and subject to all the terms of what is commonly known as the Workmen's Compensation Law of the state of Oregon". It is noted also that the release pleaded contains

the recital that "said employer and said employee are not contributors to the State Industrial Accident Fund of the state of Oregon".

■ ■ In our opinion, error was committed in refusing to give the defendants' following requested instructions:

"One of the charges of negligence in the plaintiff's complaint is that the defendants failed to warn him. The sole purpose of requiring an employer to warn or instruct an employee is to give information to the employee of unknown and unappreciated dangers. Therefore the reason for the rule does not exist and no warning or instruction is required to be given where the employee knows and appreciates the dangers and hazards of the work that he is doing and of his employment and the law does not require of an employer such an idle thing as warning and instructing the employee under such circumstances.

"An employer is not required to warn or instruct an employee of dangers which are manifest to any one and of which the employee is already aware".

The work in which plaintiff was engaged was simple in character and any dangers involved were open and obvious. It is not the duty of the master to point out dangers readily ascertainable by the servant himself if he makes ordinarily careful use of such knowledge, experience and judgment as he possesses: Labatt's Master & Servant, § 1144. As stated in 18 R. C. L., 569:

"The duty of the employer to warn and instruct young and inexperienced employees extends only to those dangers which he in the exercise of ordinary prudence has reason to believe are not known to his employees and will not be discovered by them in time to protect themselves from injury".

In *Wike v. O. W. R. & N. Co.*, 83 Or. 678 (163 P. 825), a carpenter was injured while placing asbestos

lagging on the boiler of an engine. In commenting on an instruction relative to the duty of the defendant to warn the plaintiff, the court said:

"Furthermore, the work was simple, well within the comprehension of any man who had had a half day's experience at it, as one of the witnesses testified. The only danger incident to the work which counsel for plaintiff has called to our attention is the tendency of wire to spring unless it is attached or straightened. Plaintiff must have understood this tendency as well as anyone. The master is under no obligation to warn the servant under such circumstances; * * *". Citing numerous authorities in support of the text.

Also see *Magone v. Portland Mfg. Co.,* 51 Or. 21 (93 P. 450).

In the instant case a witness for plaintiff, who had been engaged in the same kind of work, well expressed the futility of a warning, as is disclosed by the following portion of his testimony:

"Q. Well, did anyone tell you what to do with the hook?

"A. Common sense would tell you that the hook hooked in the box, wouldn't it, tell you how to use them?

 * * * * *

"Q. Did he show you how to use them?

"A. Well, anybody ought to know how to use a hook".

What warning could have been given to plaintiff in this case which would have been of any avail? Was it not obvious that the hook might slip off the box and that if plaintiff were struck by the sharp point of the hook he would be injured?

In *Walker v. Ginsburg,* 244 Mich. 568 (222 N. W. 192), plaintiff was injured by falling from a box while attempting to pry off a board by the use of a wrecking

bar. In disposing of the contention that the master was negligent in failing to give warning, the court said:

"That plaintiff might fall, and that the bar might slip, were dangers so obvious that defendants had no duty to warn of them".

■ ■ The error in refusing to give the requested instruction of the defendants was accentuated by the instruction which the court did give relative to the duty of the defendants to warn plaintiff of the dangers attendant upon his work, omitting entirely the question as to whether or not the dangers were obvious and were known or should have been known by the plaintiff. The effect of the instructions given relative to this phase of the case was that plaintiff's inexperience, in itself, would be sufficient reason for requiring a warning. Such is not the law. True, no exception was taken to the instruction given, but we think it proper to refer to it in determining the assignment of error under consideration. Appellants were entitled to the instructions requested—whether the case be governed by the Employers' Liability Act or by the common law.

■ It is argued that since appellants took no exception to the instructions given concerning warning, the "law of the case" was established and therefore no complaint should be heard as to requested instructions refused, in conflict therewith. Such practice has never been followed in this jurisdiction, but, assuming, as stated in Branson's Instructions to Juries (2d Ed.) 232, that such is a proper rule of procedure, it is not applicable for the reason that the requested instructions were not in conflict with those given, but rather amplified the law on such issue. The principles of law requested were not covered in the instructions which the court gave.

■ We think the question as to whether plaintiff's injuries had so far affected his mind as to render him

incapable of transacting business was a matter for the determination of the jury. As stated in *Edmunds v. S. P. Co.*, 18 Cal. App. 532 (123 P. 811), "The question of sanity or insanity is not involved in matters of this kind. The question for the jury was whether or not, at the time of the settlement, plaintiff was so weak mentally and physically that he did not know and understand what he was doing". This court cannot say, as a matter of law, that plaintiff understood and appreciated the force and effect of the instrument which he executed. We will not set forth the evidence concerning the physical and mental condition of the plaintiff for the reason that it would greatly extend this already rather lengthy opinion.

■ It was also error to permit Shea to testify concerning the "going rate of wages" for work of the kind that plaintiff was doing. Plaintiff was paid 40 cents per hour whereas the "going rate" was 90 cents per hour. This evidence was not relevant to any issue. It might well have prejudiced the jury against the defendant.

In the instant case appellants submitted 49 requested instructions. It is absolutely unreasonable thus to deluge a trial judge. It is hard to conceive of a set of facts in any case that would require such lengthy instructions and certainly it was not necessary in the instant case.

We see no other error which would warrant a reversal, although some of the instructions on measure of damages might well tend toward confusion. It is not deemed necessary to comment upon the amount of the verdict.

The judgment is reversed and the cause remanded for a new trial.

Rossman and Kelly, JJ., concur.

Rand, C. J., did not participate in this decision.