Argued October 13; affirmed November 10, 1931

# WEBB *v.* HOOVER-GUERNSEY DAIRY CO.

(4 P. (2d) 631)

*Robert F. Maguire,* of Portland (Winter & Maguire, of Portland, on the brief), for appellant.

*Paul R. Harris,* of Portland (Davis & Harris, of Portland, on the brief), for respondent.

CAMPBELL, J. This is an action for personal injuries growing out of an automobile collision at the intersection of Ainsworth avenue and East Twenty-third street, Portland, Oregon.

The plaintiff, an infant, has sued by his guardian ad litem. It is alleged in the complaint that the injury was caused by certain negligent acts of the defendant, to wit: That the defendant in operating its automobile failed to have said automobile under proper control; failed to keep a proper lookout; operated said automobile at a high, dangerous and reckless rate of speed, to wit: in excess of 20 miles per hour.

The defendant in its answer denied all acts of negligence on its part, and for a separate answer alleged in effect: That at the time of the injury complained of, plaintiff was riding in a car owned and operated by his father, and that his father at said time and place was negligent in not keeping a proper lookout; driving at an excessive rate of speed; did not have the car under control; and that whatever injury plaintiff suffered was caused solely by the said negligent acts of his father.

All these matters were denied by the plaintiff in his reply. The cause was tried to a jury who returned a verdict in favor of plaintiff, on which judgment was entered. Defendant appeals.

At the time of the accident plaintiff was about two months old. His mother, holding him on her lap, was riding in the front seat of the automobile owned and driven at the time by his father.

■ The assignments of error 1, 2, 3, 4, 5, 8, 9, depend upon the legal proposition of imputing the negligence of the parent to the child. Defendant contends that such imputation should obtain. The authorities in the different states are not in harmony upon this question.

"According, however, to the very decided weight of authority, the negligence of the parent or guardian having custody and control of an infant, in exposing it to danger, will not be imputed to the child so as to preclude its right of action against a third person by whose negligence it is injured. In a well considered case the court said: 'The right of an infant to damages for injuries to his person caused by the wrongful act of others is a property right, and entitled to the same protection in the courts as is accorded to the property held or owned by him. He is entitled to the protection of the law equally with persons who have attained their majority, and to refuse him relief on the ground of his parents' indifference or negligence would be to deny it to him. To impute to him negligence of others is harsh in the extreme, whether the negligence so imputed be that of his parents, their servants or his guardian.' " 20 R. C. L. 155, Sec. 129; 1 Berry on Automobiles (6th Ed.), 502, Sec. 626; 1 Cyc. of Automobile Law (Blashfield) 1001; 45 C. J. 1022, sec. 576.

The text is supported by many authorities. (See note to *Gallagher v. Johnson,* 15 A. L. R. 414).

■ Assignments of error 6, 7. The defendant requested the court to instruct as follows:

"You are instructed to disregard the allegations of the complaint that as a result of the accident the minor plaintiff underwent a surgical operation and that he will in the future suffer great physical pain and that he has been rendered extremely nervous and that the injuries received by him are of a permanent nature, for the reason that no evidence has been offered upon any of those subjects."

There was evidence of a surgical operation. The child's father testified: "He was not cut open or anything, but they drew blood from his spine fourteen times."

■ The court, in covering the question of damages, instructed:

"In the event you find in favor of the plaintiff * * * you should allow plaintiff such a sum as damages as will fully and justly compensate him for the injuries he has received as a direct and proximate result of the negligence, if any, on the part of the defendant, and he should be awarded such a sum as will compensate him for the pain and suffering which he has endured, if any * * *. You are instructed to disregard the allegations of the complaint, that as a result of the accident the minor plaintiff will in the future suffer great physical pain and that he has been rendered extremely nervous and that the injuries received by him are of a permanent nature, for the reason that no evidence has been offered upon any of those subjects."

The instructions given were as favorable to the defendant as the evidence in the case justified.

■ Appellant contends that plaintiff's allegation in his complaint, "that defendant operated its automobile at a high, dangerous and reckless rate of speed, to wit, in excess of twenty miles an hour," is equivalent to an admission that any less rate of speed would not be dangerous or reckless. If plaintiff should have established the fact that defendant was traveling at the time and place of the accident at a speed in excess of 20 miles an hour, the maximum legal rate of speed, that would, of itself, have been negligence, and the court would so instruct the jury. Should the evidence show that defendant was traveling at a less rate of speed, then it would be a question of fact for the jury to

determine under all the facts and circumstances, disclosed by the evidence, whether the rate of speed at which defendant operated his car was negligence. The court committed no error in submitting the question to the jury.

■ Assignment of error 12. Mrs. F. K. Haussman was called as a witness for plaintiff. She had been a passenger in the automobile of plaintiff at the time of the accident. She testified to the circumstances surrounding the accident, such as the rate of speed of both the cars, and the place where the collision occurred. During the cross-examination, counsel for defendant produced and introduced in evidence a written instrument. This writing was a statement purported to have been made by the witness to someone shortly after the accident, and committed to writing by the person to whom the statement was made. On the back of the statement appeared, "I have read this statement and found it to be correct. (Signed) Mrs. F. K. Haussman." The witness acknowledged the indorsement and signature to have been written by her. On redirect examination, the witness was asked by counsel for the plaintiff:

"Q. Who took this statement from you, Mrs. Haussman?

"A. Some fellow from the insurance company.

"Q. Do you know what this man's name was?

"A. No, I do not, but he had a girl friend of mine with him.

"Q. Who was that?

"A. Signe Ulrich.

"Q. Well, now, do you have any recollection of having told them that Mr. Webb had been driving very fast?

"A. No, sir, I don't.

"Q. Did you make such statement as that to him?

"A. I do not remember such.

　　＊　　　　＊　　　　＊　　　　＊　　　　＊

"Q. Well, now, you have been up to my office with Mrs. Webb a couple of times, haven't you?

"A. Yes.

"Q. And in all of these times you never remembered to tell me that you had signed this statement, did you?

"A. No, sir; I didn't."

The statement offered in evidence not being in the handwriting of the witness, and being in some respects different from her testimony in chief, counsel for plaintiff had a right on redirect examination to disclose the interest the party writing the statement had in the matter.. The answer in which the matter of insurance appeared was not responsive to the question asked. Counsel could not foresee that such an answer would be made. The answer does not show that defendant, or any one else, was insured. Counsel had a right to have the witness disclose who prepared the statement. When parties interested, either directly or indirectly, in the result of litigation, send their agents to interview witnesses and prepare statements for such witnesses to sign, the jury has not only the right to know who such agents are, but whom such agents represent, when a discrepancy arises between the testimony given by the witness on the stand and the statement prepared by such agent. After considerable experience with jurors, the writer is convinced that the average jury is a representative cross-section of the better class of citizens of the county from which they are drawn. The average juror is actuated by a deep sense of responsibility and a high regard for the rights of the litigants. He exhibits a superior intelligence in arriving at a verdict from the confused mass of evidence presented. He may not always fully comprehend the court's instructions but he generally displays a lively sense of

justice in determining the rights of the parties to the action. In the instant case the record does not disclose that the jury found their verdict on anything except the evidence and law given them on the trial.

Assignments of error 10 and 11 are based on the refusal of the court to grant an involuntary nonsuit or to direct a verdict in favor of defendant, on motion of defendant's counsel on the ground that there was evidence of contributory negligence on the part of plaintiff's father, and that such negligence is imputed to the plaintiff is disposed of in the assignments 1, 2, 3, 4, 5, 8, 9.

Finding no error, the judgment of the circuit court is affirmed.

BEAN, C. J., BROWN and BELT, JJ., concur.