Submitted on briefs July 1; affirmed July 26, 1932

# DAVIS *v.* UNDERDAHL

(13 P. (2d) 362)

*T. M. Morris* and *Eugene H. Dowling,* both of Portland, for appellant.

*Davis & Harris,* of Portland, for respondent.

244

BEAN, C. J.   At the conclusion of plaintiff's case in chief, defendant moved for an order of dismissal and nonsuit against the plaintiff, which the court refused to grant, and at the conclusion of all of the testimony defendant moved for a directed verdict in his favor, which the court also refused to grant, to which rulings exceptions were allowed.

■ Defendant contends that the court erred in refusing to grant defendant's motions for an order of nonsuit and for a directed verdict in favor of defendant upon the ground that the testimony conclusively showed that the plaintiff was guilty of contributory negligence. Defendant asserts that plaintiff operated his automobile in excess of fifteen miles an hour during the last fifty feet of his approach to the intersection of East Fifteenth and Clackamas streets and while traversing the same.

Miss Peterson, an eye witness for plaintiff, testified as follows:

"A.   Well, the Davis boy's car was coming south on Fifteenth, and I saw that car first, but didn't see the

other car until the Davis boy's car was—well, he was almost—I guess he was almost to the intersection when the other boy's car shot out; the Davis boy's car was already in the intersection before the other car and the Packard hit the Ford about—well, quite close to the middle of the intersection there and swerved over to the sidewalk and ran up on the sidewalk.

"Q. What car run up on the sidewalk?

"A. The Packard.

\*　　　\*　　　\*　　　\*　　　\*

"Q. What would you say as to the approximate speed of the cars?

"A. Well, the Ford was going I should think between fifteen and twenty miles an hour, not over twenty anyway, more likely to be about fifteen, and the other car was going at a much greater rate of speed, probably going thirty-five or slightly less than that."

Plaintiff testified on cross-examination that when he reached a point about seventy-five feet from the intersection he slowed down to fifteen miles an hour, but before that he was probably driving at the rate of twenty miles per hour.

The question for the jury to determine was whether Miss Peterson was right in estimating that at the time plaintiff "was going, I should think between fifteen and twenty miles an hour," or whether the plaintiff was correct in saying he slowed down to fifteen miles per hour, at a point seventy-five feet from the intersection of the streets. Miss Peterson later in her testimony corrected it by saying plaintiff more likely was proceeding at the rate of fifteen miles per hour.

In *Olds v. Hines,* 95 Or. 580, 585 (187 P. 586, 188 P. 716), we read the following:

"We remember also that it is•a binding principle that the plaintiff is entitled to the benefit of whatever his testimony tends to prove, although his witnesses

may contradict each other, and that if any reasonable construction of the evidence on his behalf, or any part thereof, shall fairly tend to show that he is entitled to recover, it is the duty of the court to submit the question to the jury.''

■ While plaintiff was driving in the intersection it appears that he was forced to act in an emergency and increased the speed of his car in an attempt to dodge defendant's car. When a person is suddenly placed in a position of imminent peril, without sufficient time to consider all the circumstances, the law does not require of him the same degree of care and caution as it requires of a person who has ample opportunity for the full exercise of his judgment and reason: *Goebel v. Vaught*, 126 Or. 333, 336 (269 P. 491). Citing 42 C. J. § 552, 592; Berry on Automobiles, (4th Ed.) § 217, and other authorities.

■ The court submitted the case to the jury on the theory of emergency by proper instructions. We think the question of whether plaintiff was guilty of contributory negligence was for the jury to determine.

■ Defendant contends that the court should have directed a verdict in his favor on the ground that the uncontradicted evidence of the defendant was to the effect that the Packard automobile, which he owned and which was involved in the collision, was not being operated by him, for him or with his authority, knowledge or consent. The defendant was admittedly the owner of the Packard automobile which was involved in the collision.

On the question as to whether at the time of the accident the driver of the Packard car was the agent of defendant, Mr. L. D. Haglund, a witness, testified that shortly after the accident in question he had a conversation with the defendant Underdahl and that

Mr. Underdahl, after admitting he owned the car in question, stated that David Moore, the driver of the Packard, at the time of the accident, was working part time for defendant and was going to school part of the time, that the defendant stated that the boy drove the car off and on for him, and reiterated on cross-examination that Underdahl told him that David Moore was employed by him, working part of the time, that is, going to school and working part of the time.

It appears from defendant's testimony that he had known David Moore about four years; that the boy was an orphan; that he took an interest in him and assisted in looking after him, and that he was partially the guardian of the boy. He also stated that the boy drove the car in question once in a while, but he did not know that he took it without defendant's consent. He further stated that Moore drove for him at times when defendant was with him and also that he drove a former car of defendant's when defendant was not with him.

We cannot say as a matter of law that there is no evidence in the case upon the issue of agency. Defendant cites and relies upon *Judson v. Bee Hive Auto Service Co.*, 136 Or. 1, 8 (294 P. 588, 297 P. 1050, 74 A. L. R. 944). In the Judson case, after it was shown that defendant was the owner of the motor vehicle involved, the defendant introduced unquestioned documentary evidence in the form of a written contract showing the rental of the car by the defendant to the driver, tending to relieve the defendant from liability. The case differs from the case in hand. In the present case, instead of the inference or presumption arising by virtue of the ownership of the car having been overcome, there is other testimony tending to show that the driver, David Moore, was the agent of defendant.

See *Talarico v. Baker Office Furniture Co.*, 298 Pa. 211 (149 Atl. 883, 884) ; *Feldtman v. Russak,* 141 Wash. 287 (251 P. 572, 573), and cases there cited.

In *Dierks v. Newsom,* 49 Cal. App. 789 (194 P. 518), it was held that plaintiff made out a prima facie case against defendant when he showed the automobile causing the injury belonging to defendant. At page 793 of that volume the court states as follows:

"The court saw and heard the witnesses testify, and with this advantage, not enjoyed by us, it was for it to determine the degree of credence to be accorded to this testimony. It is not essential that the credulity of the court should correspond with the positiveness with which a witness testifies. A court may reject positive testimony, although it be not contradicted or impeached by any direct testimony. Its inherent improbability may be such as to deny it all claims to belief. A witness' manner of testifying may give rise to doubts as to his sincerity, or create the impression that the facts testified to by him are colored or not correctly stated."

See *Schultze v. McGuire,* 241 N. Y. 460 (150 N. E. 516) ; *McDonough v. Vozzela,* 247 Mass. 552 (142 N. E. 831) ; *Sieber v. Russ Bros. Ice Cream Co.,* 276 Pa. 340, 345 (120 Atl. 272) ; *Hart v. Brusnaham,* 5 N. J Misc. 469 (137 Atl. 845, 846).

In the instant case plaintiff's prima facie showing is not based solely on the presumption of the ownership of the car involved, but is supported by corroborating evidence to which we have alluded in a general way. Defendant's attempt to overcome plaintiff's prima facie case is practically based upon his own testimony that the driver was not his agent at the time and place of the accident. We think there was no error in the trial court refusing to grant a nonsuit or to direct a verdict in favor of the plaintiff.

■■ Defendant assigns as error the refusal of the court to admit in the evidence defendant's exhibit, an insurance policy written by the Great Lakes Insurance Company covering his automobile involved in the collision. It was offered for the purpose of showing that defendant was not protected by insurance. It was not shown whether the defendant had other insurance policies on his car or not. L. J. Ruble was called as a witness for defendant. He had obtained a written statement from plaintiff in regard to the accident, which plaintiff claimed was partly incorrect. Mr. Ruble was permitted to testify on cross-examination over defendant's objection that in addition to being requested by Underdahl, the defendant, to investigate the collision in question, he was also in the employ of the Great Lakes Insurance Company, which company issued the policy offered in evidence. On redirect examination the witness Ruble testified as follows:

"Q. Now you said in making this investigation you were employed, in addition to being requested by Mr. Underdahl, to make, you were asked by the Great Lakes Insurance Company?

A. Yes, sir.

Q. In what way were they interested?

A. They had a fire, theft and collision insurance on Underdahl's car."

In *Kitchel v. Gallagher*, 126 Or. 373, 380 (270 P. 488), this court held as follows:

"Defense put on the witness-stand a Mr. Sowers, who had sought and secured a statement from plaintiff regarding the cause and manner of the accident. This statement differed materially in some particulars from the testimony of plaintiff. Defendant put on the witness-stand the party who had made the investigation and procured the statement. At that time the fact was brought out that he was representing an insurance company. For that reason defendant is in no position

to take advantage of the fact that evidence that defendant was insured was taken to the jury." See also Webb v. Hoover-Guernsey Dairy Co., 138 Or. 24 (4 P. (2d) 631).

It is contended by defendant that after the question of insurance had been referred to on the cross-examination of Mr. Ruble, the court should have permitted the defendant to introduce in evidence the insurance policy referred to for the purpose of showing that the Great Lakes Insurance Company had no interest whatsoever in the case. It will be seen that the matter of insurance was mentioned incidentally in eliciting testimony as to the interest that the witness Ruble had in the case. Defendant seems to concede that the plaintiff had the right to bring out the fact of the employment of Ruble by an insurance company for the purpose of showing his interest in the case and for the further purpose of passing upon his credibility as a witness.

In *Fletcher v. Saunders,* 132 Or. 67 (284 P. 276), where the plaintiff's counsel asked the defendant's witness at whose request he went down there and the witness answered that he went there at the request of a certain party "the insurance company's man," it was held that the plaintiff's counsel had the right to ask the question, and that it was not asked in bad faith for the purpose of bringing out a prejudicial matter, but merely for the purpose of showing the witness' interest and bias in the case to discredit his testimony. See Note to *Stehouwer v. Lewis,* 74 A. L. R., p. 856.

The question of whether the defendant was protected by insurance was not an issue in the case. In so far as the plaintiff was concerned, it was only introduced incidentally, as we have noticed.

In a note to *Stehouwer v. Lewis,* 74 A. L. R., p. 853, et seq., we find, in effect, the following. The right of the defendant to show that he was not insured or only partly insured has generally been denied. While the cases are not unanimous on the question, in Missouri, the right is denied, even though the plaintiff, by his examination of the jurors as to their interest in an insurance company, has injected the matter of insurance into the case. Thus, refusal of the court to allow the defendant's counsel to prove that his client was not insured, after the plaintiff's counsel had been properly permitted to question the jurors as to whether they were interested in a named insurance company, which the counsel for the other defendant, out of the hearing of the jury, admitted carried the risk, was held not error in *Clayton v. Wells,* 324 Mo. 1176 (26 S. W. (2d) 969), following *Smith v. Star Cab Co.,* 323 Mo. 441 (19 S. W. (2d) 467), and *Malone v. Small,* (Mo. App.) 291 S. W. 163.

In *Stewart v. American R. E. Exp. Co.,* (Mo. App.) 18 S. W. (2d) 520, where the defendant contended that he should have been permitted to ask the jury whether they would be prejudiced because he did not carry liability insurance, on the theory that the plaintiff would be permitted to inquire whether any juror was connected with, or interested in, any insurance company which might be conducting the defense, the court held, in the absence of an intimation that the defense was being conducted by an insurance company, there would be no basis for such inquiry, since the plaintiff is permitted to make such inquiry only when the defense is in fact being conducted by an insurance company, for the purpose of enabling him to make an intelligent challenge of the panel. See also *Clayton v.*

*Hydraulic Press Brick Co.,* (Mo. App.) 27 S. W. (2d) 52; *Graves v. Boston & M. R. Co.,* 84 N. H. 225 (149 Atl. 70).

The mere offer of the insurance policy in the present case would not alone show that the defendant was not insured. It did not pertain to any of the issues in the case. The cross-examination of the witness Ruble did not warrant the defendant, upon redirect examination, in showing that the defendant was not fully protected by insurance or to introduce the insurance policy in evidence. There was no other testimony offered or tendered upon that point. There was no error in the court's ruling in this respect.

We find no error in the record.

Judgment of the circuit court is affirmed.