Argued March 15, affirmed May 24, 1961

# QUIGLEY *v.* ROATH
### 362 P. 2d 328

*George L. Hibbard,* Oregon City, argued the cause for appellant. On the brief were Hibbard, Jacobs, Caldwell & Kincart, Oregon City.

*Charles Paulson,* Portland, argued the cause for respondent. With him on the brief were Peterson & Lent, Portland.

Before MCALLISTER, Chief Justice, and WARNER, SLOAN, O'CONNELL and LUSK, Justices.

O'CONNELL, J.

This action was brought under the Idaho guest statute (9 Idaho Code Ann., § 49-1401) to recover damages for injuries suffered as a result of an automobile accident which occurred in the state of Idaho. Plaintiff was one of three occupants of defendant's automobile. The others were defendant and Don Wheatley. Wheatley was driving the automobile as defendant's servant at the time of the accident. The pleadings and proof raised an issue of fact as to whether plaintiff was a guest or a paying passenger at the time of the accident. Defendant raised the defense of assumption of risk. Defendant moved for a directed verdict. The motion was denied. There was a verdict and judgment for plaintiff. Defendant moved for a judgment n. o. v. or in the alternative for a new trial. The motion was denied and defendant appeals.

Plaintiff, defendant and Wheatley were construction workers on the Brownlee Dam in Hell's Canyon, Idaho. All of them worked the swing shift from 4:30 p.m. to 12:30 a.m. After work at approximately one a.m. on May 17, 1958, they began driving from Hell's Canyon on their way to Boise, Idaho, where plaintiff intended to purchase an automobile. The accident occurred on the return trip from Boise to Hell's Canyon at approximately one p.m., May 17, 1958, when they collided with a large truck and trailer. Soon after their departure from Hell's Canyon the trio purchased a 24-bottle case of beer. While Roath at one point testified that the case of beer was "consumed" before arriving at Boise, which was at approximately 8:00 a.m., he later stated that he drank four or five bottles and that Wheatley "had a couple more." Quigley testified that at least eight bottles remained when they reached Boise. The driver of the truck which collided with the Roath vehicle testified that there were some unopened bottles of beer in the car after the accident. However, he was unable to estimate their number. At Boise the three ate breakfast and then each drank a glass of beer at about 9:00 a.m. Quigley then left to see a Mr. Beck, the owner of the automobile which Quigley was interested in purchasing. Roath and Wheatley then drank two more beers at approximately 9:30 a.m. This was the last they had to drink. They began the return trip between 12:00 and 12:15 p.m. As mentioned above, the accident occurred at about 1:00 p.m.

■ Defendant assigns as error the trial court's refusal to grant defendant's motion for a directed verdict. Defendant contends that since the evidence established that plaintiff had knowledge of the sleepy and intoxicated condition of Wheatley, who as we have pointed

out was driving defendant's automobile at the time of the accident, the trial court should have ruled that plaintiff knowingly assumed the risk as a matter of law. From an examination of the evidence, including the testimony of Quigley to the effect that he believed that Wheatley had not worked the shift immediately before the accident and that he, Wheatley, was driving properly shortly before the collision, we are of the opinion that the trial court correctly submitted to the jury the question of assumption of risk. *Willoughby v. Driscoll*, 168 Or 187, 120 P2d 768, 121 P2d 917 (1942) (Host, in company of guest, had three drinks of rum cocktail, one of whiskey, one "short" and one "large" beer. The court agreed that in proper cases the guest could be barred by assumption of risk as a matter of law [p. 203] but *held* that the issue was for the jury on the facts); *Booth v. General Mills, Inc.*, 243 Iowa 206, 49 NW2d 561 (1951) (Host had been drinking beer and was intoxicated immediately after accident. *Held*, assumption of risk issue properly submitted to jury); *Davis v. Hollowell*, 326 Mich 673, 40 NW2d 641 (1950) (Host and guest drinking together from 7:30 p.m. until after sunrise. *Held*, guest not precluded by assumption of risk); *Stotzheim v. Djos*, 256 Minn 316, 98 NW2d 129 (1959) (Host and guest drinking together; host drank three to five "strong" beers in four hours prior to accident and was weak from lack of food; guest was asleep at time of accident. *Held*, directed verdict for host for reason of assumption of risk reversed); *Westergard v. Peterson*, 117 Mont 550, 159 P2d 518 (1945) (Host and guests on hunting and picnicking outing, host had eight or more drinks of whiskey. *Held*, assumption of risk for jury); *Bowman v. Central R. Co. of New Jersey*, 27 N J Super 370, 99 A2d 423 (1953) (Host had eight drinks of

whiskey and guest had seven in the three hours preceding accident; tavern keeper of final stop testified they did not appear intoxicated. *Held,* trial court's finding of assumption of risk as a matter of law reversed); *Shoemaker v. Floor,* 117 Utah 434, 217 P2d 382 (1950) (Guest and host on overnight drive. Host drank three cocktails. *Held,* applying Idaho law, guest not barred by assumption of risk); *Christensen v. Tollison,* 7 Wis2d 216, 96 NW2d 330, 332 (1959) (Host and guest both "long on drink and short on sleep." *Held,* issue of assumption of risk properly submitted to jury).

■ In connection with the defense of assumption of risk the trial court gave the following instruction:

"Now, the defendant in this case interposes a defense, as I told you, of assumption of the risk. When a person, whether a guest or a passenger, enters a vehicle knowing that the one who is operating the vehicle is intoxicated, sleepy or generally physically unfit to the extent that he is unfit to operate the vehicle, he assumes the hazards involved and may not recover if injury results from such condition of the driver."

Defendant requested the following instruction:

"In connection with the claim of intoxication as it applies to all the parties in this case, I instruct you that whether or not a person involved in an accident was then intoxicated is a proper question for the jury to consider in determining his conduct, and whether or not he was negligent. However, intoxication is no excuse for failure to act as a reasonable prudent person would act. An intoxicated person is held to the same standard of care as a sober person. In other words, voluntary intoxication is no defense to the person against whom intoxication is claimed.

"I instruct you that the term, intoxication,

means a condition resulting from the imbibing of alcoholic liquor whereby a person's normal physical or mental faculties either of muscle, nervous system, perception, will or judgment are so impaired that he no longer has the capacity to drive a vehicle with the caution characteristic of a sober person of ordinary prudence in full possession of his faculties."

Error is assigned for the court's failure to give the requested instruction. The instruction given informed the jury in effect that one is intoxicated when his condition as a result of imbibing intoxicating liquors is such that he is unfit to operate the vehicle in question. The requested instruction contained a more complicated rhetoric to express less aptly the very same idea. The instruction given was in accord with the rule stated in *Willoughby v. Driscoll*, 168 Or 187, 203, 120 P2d 768, 121 P2d 917 (1942). There the court said:

"* * * no ordinarily prudent person would enter an automobile to ride if, at such time, it was known by him that the driver was intoxicated to such an extent that he could not properly drive the car. Under such circumstances, the guest would be assuming the risk of being injured and it could so be declared as a matter of law."

We find no error in refusing to give the requested instruction.

■ For the purpose of impeachment defendant called as his witness Carolyn Stone, a stenographer who recorded the statements made by plaintiff to Richard Mitchell, an insurance adjuster for defendant's insurance carrier. The statements were made by plaintiff at a hospital where he was recuperating after the accident. Carolyn Stone, in response to questions on direct examination as to her employment, stated; "I work for the prosecuting attorney of Canyon County,

Idaho." This could have given the jury the impression that the witness had recorded the plaintiff's statements in the course of her official duties as an employee of the prosecuting attorney's office and that she was participating in the investigation of a criminal charge. On cross examination that inference was negatived by the following testimony:

"Q Now, this business up in the hospital had no connection with the county prosecutor's office, did it?

"A No, sir."

However, plaintiff's counsel continued his inquiry with respect to the circumstances under which the plaintiff's statement at the hospital was taken and finally asked the witness to state the nature of Mitchell's business. She responded, "He is an adjuster." Defendant objected to the questioning which elicited this response, and moved for a mistrial on the ground that plaintiff had deliberately interjected the subject of insurance into the case. The motion was made after the witness was questioned at length to show that plaintiff had made statements in addition to those concerning which she, Mrs. Stone, had testified upon direct examination. The trial court denied the motion on the following ground: "[F]or the reason that the young lady is reciting an oral conversation. It's proper to show what her interest was in this matter, and the interests of the person in whose pay she was, because it all goes to her credibility, as to whether she accurately recited the conversation."

The ruling was undoubtedly made upon the basis of *Smith v. Pacific Truck Express*, 164 Or 318, 100 P2d 474 (1940). There Mr. Justice Lusk explained the principle governing the admission of evidence dis-

closing the existence of insurance coverage in negligence cases.

> "* * * Generally, the fact that the defendant in a case of this kind is protected against loss by a contract of insurance is irrelevant to the issues of negligence and injury, and, being prejudicial in character, may not be shown. *Fletcher v. Saunders*, 132 Or. 67, 70, 284 P. 276; *Jones v. Sinsheimer*, 107 Or. 491, 494, 214 P. 375; and cases there cited. But issues may develop on the trial which make it proper to divulge that fact. It is always permissible to show the interest or bias of an adverse witness. And, so, when an insurance agent takes the stand for the defense his connection with a company which has insured the defendant, is conducting the defense, and whose money is at stake, may be brought out on cross-examination to affect his credibility. *Davis v. Underdahl*, 140 Or. 242, 249, 13 P. (2d) 362; *Fletcher v. Saunders*, supra; *Kitchel v. Gallagher*, 126 Or. 373, 380, 270 P. 488; *Jones v. Sinsheimer*, supra. And, if the evidence is otherwise relevant, it will not be excluded because the insurance factor is disclosed as an essential part of it. *Parker v. Norton*, 143 Or. 165, 21 P. (2d) 790; *Webb v. Hoover-Guernsey Dairy Company*, 138 Or. 24, 4 P. (2d) 631; *Fletcher v. Saunders*, supra. The many ramifications of a subject which frequently gives rise during the trial of personal injury cases to awkward situations and perplexing questions are treated at length in annotations in 105 A.L.R. 1319; 95 A.L.R. 388, 74 A.L.R. 849; 56 A.L.R. 1418." 164 Or at 328-329.

The principle just stated is applicable and controlling in the case at bar. Mrs. Stone's connection with Mitchell and the insurance company which he represented could be shown for the purpose of affecting her credibility.

The judgment of the lower court is affirmed.