# FAIRBROTHER, *Appellant,*
## *v.*
# RINKER, *Respondent.*

547 P2d 605

*Gerald R. Pullen,* Portland, argued the cause and filed a brief for appellant.

*James H. Clarke,* Portland, argued the cause for respondent. With him on the brief were Dezendorf,

Spears, Lubersky & Campbell and Richard S. Borst, Portland.

O'CONNELL, C. J.

**O'CONNELL, C. J.**

This was an action to recover damages for personal injuries alleged to have been incurred by plaintiff when his automobile was struck in the rear by defendant's automobile. Plaintiff appeals from a judgment entered on a verdict for defendant.

■ Plaintiff stopped his automobile at an intersection showing a red light to his lane of traffic. Defendant struck plaintiff's automobile in the rear. Plaintiff alleges that as a result of the collision he suffered back, arm and neck injuries which were painful and as a result of which he avoided doing anything of a strenuous nature. Defendant's insurer, Allstate Insurance Company, employed Vincent Castrapel, a private investigator, to make an undercover surveillance of plaintiff's activities prior to trial. In carrying out this assignment, Castrapel took moving pictures and recorded other observations of plaintiff's conduct which showed that plaintiff had done various things which involved strenuous activity. When Castrapel testified to this effect plaintiff, in an effort to prove bias, sought to show that Castrapel was hired by Allstate Insurance Company to make the surveillance; that he was paid $400 for his services, and that he was regularly employed by insurance companies to make undercover surveillances. The trial court refused to allow plaintiff to introduce such evidence, whereupon plaintiff made an offer of proof. On appeal, plaintiff assigns as error the trial court's refusal to receive evidence identifying Allstate as Castrapel's employer. Castrapel did testify that he was engaged in the business of making investigations for "firms or lawyers"; that he had been employed on defendant's behalf to make the investigation in this case, and that he was paid $473 for his services. Plaintiff argues that the jury should be told in addition that Castrapel was hired and paid by defendant's insurer.

The testimony that Castrapel was engaged in the business of making investigations and was paid to

make the investigation on behalf of defendant revealed to the jury the facts from which bias could be inferred. To draw this inference it was not necessary for the jury to know that an insurance company was the witness' employer. Plaintiff argues that the jury could regard the witness as having a greater zeal to slant his testimony in favor of defendant out of a desire to get further business from Allstate. Plaintiff could have adduced this additional evidence of potential bias without revealing defendant's insurance coverage. Our ruling does not preclude plaintiff from introducing evidence that most of the witness' business was for the same group of "firms and lawyers" or that the witness seeks repeat business "by showing them (his) skill and (his) efforts on their behalf." Mention of an insurance company adds nothing to the inference. Therefore, the evidence would still be inadmissible on the ground that the need to avoid prejudice which could result from the disclosure of insurance coverage[1] would outweigh the need to strengthen an inference which was already permissible upon the basis of other evidence. We hold, therefore, that the trial court did not err in rejecting the proffered evidence.

■ Plaintiff also assigns as error the following instruction to the jury:

"* * * And in fixing an amount of damages, you are to consider not only what might be right for an injured person to receive in order to afford just compensation, but also what it is just to compel the other party to pay."

Plaintiff took exception to this instruction on the ground that it invited the jury to consider defendant's financial circumstances in arriving at the amount of damages which should be assessed.[2] Defendant coun-

---

[1] Even if the prejudice "is not likely to be very great." *See Johnson v. Hansen,* 237 Or 1 at 18, 389 P2d 330, 390 P2d 611 (1964).

[2] Plaintiff contends that the jury could have been influenced to deny recovery by the fact that defendant "was a married woman of modest means with three children and an old automobile * * * [1966 Volkswagen Beetle]."

ters with the argument that the instruction says no more than previous Oregon cases have said in connection with the assessment of a fair measure of damages. Thus in *Hansen v. Oregon-Wash. R.& N. Co.,* 97 Or 190, 201, 188 P 963, 191 P 655 (1920) the court said:

> "* * * While the fundamental rule of the law is to award compensation, yet rules for ascertaining the amount of compensation to be awarded are formed with reference to the just rights of both parties, and the standard fixed for estimating damages ought to be determined not only by what might be right for an injured person to receive in order to afford just compensation, but also by what is just to compel the other party to pay * * *."

The foregoing statement was quoted in *Oregon Mutual Fire Ins. Co. v. Mathis,* 215 Or 218, 223, 334 P2d 186 (1959), and again in *Mock v. Terry,* 251 Or 511, 513, 446 P2d 514 (1968). All of these cases involved the measure of damages for injury to property, and the reference to what was just to compel the defendant to pay clearly related to the manner of measuring a monetary loss when personal property is damaged; these cases did not purport to say that the ability of the defendant to pay should be considered in assessing damages.

■ Defendant argues that the instruction given in the present case does not carry the suggestion that defendant's financial condition is to be considered by the jury in determining the amount of damages which should be allowed, and that the instruction amounted only to a statement that compensation for damages sustained "must be in an amount that is right to receive and right to pay." It may be conceded that the instruction could be interpreted to mean that what is "just to compel the other party to pay" is never less than what is "just compensation" to the plaintiff. But the instruction would still be prejudicial and reversible error if it can also be interpreted to bear the meaning which plaintiff attributes to it. An ambiguous instruction, equally capable of a correct or an incorrect

statement of the law, is just as vulnerable to attack on appeal as one which is unambiguously incorrect if it is prejudicial. We think that the instruction could have prejudiced plaintiff's chance of recovery in this case and therefore the judgment must be reversed.

In his dissenting opinion Justice Tongue chides the author of the majority opinion for having written an "eloquent" statement in a specially concurring opinion in *Johnson v. Hansen,* 237 Or 1, 9, 389 P2d 330, 390 P2d 611 (1964), to the effect that the prejudicial effect of the mention of insurance before a jury is largely a thing of the past, a view which is irreconcilable with the position now taken in the present case. It should be obvious that the liberty a judge has to express his dissenting views does not give him the license when speaking for the majority of the court to use those unaccepted views as a basis for the court's opinion.

Justice Tongue also chides the author of the majority opinion for reasoning "without reference to any legal authorities, much less to the previous decisions of this court" that an inference was already permissible upon the basis of other evidence in this case. It is difficult to understand why any support from other authorities is needed to explain the ground for drawing a simple inference which rests upon the facts of the particular case before the court.[3]

Reversed and remanded for a new trial.

**TONGUE, J.,** dissenting in part and concurring in part.

I concur in the holding by the majority that the trial court erred in an instruction to the jury and that, as a result, the case must be reversed for a new trial. I dissent, however, from the holding by the majority that the trial judge did not err in refusing to permit plaintiff's attorney to impeach the credibility of defen-

---

[3]In light of the criticism which has been levelled at long opinions, judges should err on the side of restraint in citing and quoting from authorities which do not illuminate the court's reasoning.

dant's investigator by showing, among other facts, that he was hired and paid by Allstate Insurance Co.

In this case of admitted liability the jury returned a defense verdict. The obvious and successful strategy of the defense was to capitalize on sympathy by the jury for a mother of three children with a 1966 Volkswagen. That strategy was obvious from defendant's requested, and clearly erroneous, instruction to the jury that in fixing an amount of damages it was to consider not only what might be "right" for an injured person to receive, "but also what it is just to compel the other party to pay." Also, and in accord with that strategy, defendant's investigator, who had been hired and paid by Allstate Insurance Co., testified on direct examination not only that he was engaged "on behalf of the defendant," but that *"my investigations are all from firms or lawyers."*

That statement was a "half-truth" which enabled defendant to conceal the admitted facts, as included in the rejected offer of proof, that the investigator had been "contacted" and hired by an adjuster for Allstate Insurance Co. and that most of his business was "being employed" by "insurance companies and lawyers."

It is one thing for an insurance company, in performing its obligation under an insurance policy to provide a defense in actions against an insured, to seek to "sanitize" the trial from the improper interjection into the trial of the fact of insurance. It is quite another thing, in my judgment, for an insurance company to not only "hide behind the skirts" of a sympathetic mother of three children, but to carry out that strategy by seeking to conceal the fact that perhaps the most important witness for the defense was "contacted," hired and paid by the insurance company and that most of his business was for insurance companies.

To approve such a strategy, in my opinion, permits the "bugaboo of insurance" to be used by an insurance company not only as a "shield," but as a "sword."

Indeed, even the use of that concept as a "shield" to protect insurance companies from allegedly improper prejudice has been the subject of increasing attack in recent years. In one of the most eloquent statements to that effect the writer of the majority opinion in this case, in a specially concurring opinion in *Johnson v. Hansen,* 237 Or 1, 389 P2d 330, 390 P2d 611 (1964), said (at 16-17):

"* * * There is substantial support in the adjudicated cases as well as in the texts and legal periodicals for the view that the mention of insurance has little effect upon the jury's verdict. For example, in *Muehlebach v. Mercer Mortuary and Chapel, Inc.,* 93 Ariz 60, 378 P2d 741, 744 (1963), the court said *'the prejudicial content of a reference to liability insurance is largely a thing of the past.* And it has, in part, been made a thing of the past by the expenditure of vast sums of money by insurance companies to educate prospective jurors of the claimed relation between large verdicts and insurance rates.'

"Even without the influence of such advertising it is likely that the average juror would, in most cases, assume that defendant was insured. Wigmore, in advocating the abolition of the nondisclosure rule makes note of this point as follows:

" 'In the second place, liability-insurance is made compulsory in many States and for certain classes of liability; hence, in such cases the fact of insurance is notorious under the law.

" 'In the third place, and apart from compulsory insurance, the general prevalence of liability insurance for automobile injuries, is known to the jurors; hence for the law to forbid any disclosure of it in the course of the trial seems to be merely a piece of hypocritical futility.' 2 Wigmore, Evidence § 282a at 146 (3d ed 1940).

"This theme runs through a number of the cases criticizing the nondisclosure rule. Thus in *Causey v. Cornelius,* 164 Cal App2d 269, 276-278, 330 P2d 468, 472-473 (1958) the court states:

" '*It is time for a reappraisal of this insurance bugaboo.* * * * This insurance rule, built upon the theory of prejudice against corporations and espe-

cially insurance corporations, has largely outlived its purpose and its justification.

" '* * * * * *

" 'The only justification for the rule excluding (with limitations) evidence of the existence of insurance is the supposition that jurors will be led into excessive verdicts if they become aware of defendant's insurance coverage. Today this is a naive conceit. * * *' " (Emphasis added)

In *Blake v. Webster Orchards,* 249 Or 348, 355-56, 437 P2d 757 (1968), the majority of this court appears to have approved and adopted the foregoing view, as stated in *Johnson v. Hansen, supra,* by the following statement:

"*'* * * there is doubt whether or not a defendant is really prejudiced if a jury learns that the defendant has insurance. Johnson v. Hansen, 237 Or 1, 16-18, 389 P2d 330, 390 P2d 611 (1964). There is a belief that many jurors assume that the defendants in most tort cases are covered by insurance. Almost all jurors carry automobile insurance and many jurors carry general liability insurance. The desirability and prevalence of having insurance to protect against many forms of liability is widely advertised by the insurance industry." (Emphasis added)

It is impossible for me to reconcile these statements in *Johnson,* with which I am in complete agreement, with the statement by the same writer, in speaking for the majority in this case, that:

"*'* * * the evidence (included in the rejected offer of proof) would still be inadmissible on the ground that the need to avoid prejudice which could result from the disclosure of insurance coverage would outweigh the need to strengthen an inference which was already permissible upon the basis of other evidence."

Wholly aside, however, from the question whether this "insurance bugaboo" should be further perpetuated by the opinion of the majority in this case and wholly aside from the question whether the insurance company in this case took improper advantage of that "bugaboo," is the question whether the decision by the majority is consistent with or contrary to previ-

[ 533 ]

ous decisions by this and other courts in which the rule has been stated repeatedly that once the defendant in such a case calls as a witness a person employed by an insurance company, the plaintiff has the right to have the jury informed of that fact for its information in determining the credibility to be given to the testimony of such a witness.

The rationale of the majority, without reference to any legal authorities, much less to the previous decisions of this court, seems to be that:

"* * * *an inference* (of bias) * * * *was already permissible* upon the basis of other evidence."

and that:

"The testimony that Castrapel was engaged in the business of making investigations and was paid to make the investigation on behalf of defendant revealed to the jury facts from which bias *could be inferred.*" (Emphasis added)

In my view, the jury could properly find that there is a considerable difference between the credibility of an independent investigator hired by or on behalf of an individual defendant and the credibility of an investigator who was "contacted," hired and paid by Allstate Insurance Co., most of whose business was "being employed by insurance companies and lawyers." In this case that witness not only identified the moving pictures taken by him of plaintiff for a total of 10 minutes during a 36-hour surveillance, but also testified to his observations of plaintiff, to statements by plaintiff overheard by him, and to his ultimate conclusion that plaintiff did not "exhibit any signs of injury or disability" during that entire period of surveillance.

It is also my opinion that under the rule established by previous decisions of this court the plaintiff was not required to rely upon the hope that the jury would "infer" that Castrapel might be biased, and that this was a "permissible" inference. On the contrary, I believe that plaintiff had the right to inform the jury

of these facts so that it could judge for itself the credibility of the testimony of this witness.

This case is controlled, in my opinion, by our previous decision in *Smith v. Pacific Truck Express,* 164 Or 318, 100 P2d 474 (1940), in which we held (at 328-29):

> "Generally, the fact that the defendant in a case of this kind is protected against loss by a contract of insurance is irrelevant to the issues of negligence and injury, and being prejudicial in character, may not be shown. *Fletcher v. Saunders,* 132 Or 67, 70, 284 P 276; *Jones v. Sinsheimer,* 107 Or 491, 494, 214 P 375; and cases there cited. But issues may develop on the trial which make it proper to divulge that fact. It is always permissible to show the interest or bias of an adverse witness. And, so, when an insurance agent takes the stand for the defense his connection with a company which has insured the defendant, is conducting the defense, and whose money is at stake, may be brought out on cross-examination to affect his credibility."

In *Quigley v. Roath,* 227 Or 336, 343, 362 P2d 328 (1961), the writer of the majority opinion in this case quoted the foregoing rule with approval and held that it was "applicable and controlling" under the facts of that case, in which it was held proper for a plaintiff to show on cross-examination that a stenographer who recorded statements made by the plaintiff was employed by an insurance adjuster, after she had testified on direct examination that she was employed by a "prosecuting attorney." Indeed, in that important respect the facts of that case were not unlike those involved in this case, in which the investigator testified on direct examination that he had been employed "on behalf of" Mrs. Rinker.

More recently, in *Null v. Siegrisi,* 262 Or 264, 267, 497 P2d 664 (1972), both of these cases were cited with approval in support of the proposition that:

> "While, in general, evidence that a defendant is insured is not admissible, such evidence may be admitted when it shows interest or bias of an adverse witness * * *"

As also held in *Parker v. Norton,* 143 Or 165, 171, 21 P2d 790 (1933), under facts somewhat similar to those in *Null* :

"The mere fact that an insurance company is involved need not, under such circumstances, cause plaintiff to proceed with 'bated breath.' He is entitled to show the facts."

To the same effect, see *Walling v. Portland Gas & Coke Co.,* 75 Or 495, 498, 147 P 399 (1915); *Bennett v. City of Portland,* 124 Or 691, 265 P 433 (1928); and *Rigelman v. Gilligan,* 265 Or 109, 118, 506 P2d 710 (1973).

The same rule is also stated in an Annotation in 4 ALR2d 761, 779 (1949), as follows:

"It is usually held that it is permissible for plaintiff's counsel, when acting in good faith, to show the relationship between a witness and defendant's insurance company where such evidence tends to show the interest or bias of the witness and affects the weight to be accorded his testimony."

These previous decisions by this court are in accord with the rule as stated in McCormick on Evidence 480, § 201 (2d ed 1972), as follows:

"* * * the fact of insurance may be relevant as bearing upon the credibility of a witness."

In *Jessup v. Davis,* 115 Neb 1, 211 NW 190 (1926), quoted with approval in 2 Wigmore on Evidence 142, § 282a (1940), it is stated that:

" 'This Court is now invoked to announce a rule of practice which would afford insurance companies, real parties in interest and actually controlling litigation, the benefits of a "benevolent judicial concealment" therein, so that their identity, presence and interest may remain totally unknown to the jurors before whom the litigation is tried. In justice to opposing litigants, can this request be complied with? * * *

" '*Bias or interest of a witness is always recognized as proper to be considered by the jury* * * *. One of the valuable considerations the defendant has given for his indemnity is his express promise to "at all times render

[ 536 ]

to the company reasonable co-operation and assistance, and whenever requested by his company to aid in securing information and evidence * * * and in defending suit brought."

" 'In view of these obligations, can it be said that such a defendant does not sustain business relations with or employment by the real party in interest which would form a proper subject of cross-examination under the rule above quoted? So, too, when the *efficient investigator,* the physician, and the hired expert witness, and other witnesses, all of whom may regularly and permanently be *employed and compensated by the insurance company,* whose real interests are involved in this suit, *are by it produced and tendered as witnesses in its behalf as real parties in interest* even though its identity as such is not shown by the record, *does the fact that the defense, by secret agreement, is made in the name of the third party, operate to suspend or change the rules of cross-examination? * * **.' "* (Emphasis added)

In any event, I am in agreement with the view that:

"Once a witness commits himself to the ocean of a legal controversy, he must, under cross-examination, disclose the flag under which he sails."[1]

With all due respect to the majority, I am of the opinion that its holding that the trial court "did not err in rejecting the proffered evidence" is not only contrary to previous decisions by this court, but is a decision which will add further confusion to the law on this subject in that it makes no reference to our previous decisions, as cited above, and leaves it unclear whether some or all of them have been either qualified or overruled, *sub silentio.*[2]

---

[1] *O'Donnell v. Bachelor,* 429 Pa 498, 240 A2d 484 (1968).

[2] The majority would excuse its failure to cite or distinguish the prior decisions of this court on the subject (as listed in this opinion) by saying that "In light of the criticism which has been levelled at long opinions, judges should err on the side of restraint in citing and quoting from authorities which do not illuminate the court's meaning."

In my experience, however, even more criticism has been levelled at short opinions which consist of broad statements, without citation of supporting authorities, but which have the undisclosed effect of overruling or modifying rules established by previous decisions of this court, as in this case.

I also believe that this decision by the majority is a backward step and one that is contrary to the recent trend of decisions by this and other courts to eliminate the "insurance bugaboo" from the trial of such cases.

For these reasons I dissent from that part of the opinion by the majority, although concurring in its remand of this case for a new trial.

**McALLISTER, J.,** concurring in part; dissenting in part.

Since the witness Castrapel not only identified the motion picture taken by him, but also testified about his observations of plaintiff and his conclusion that plaintiff did not "exhibit any signs of injury or disability" the plaintiff was entitled to show that Castrapel was employed and paid by Allstate Insurance Company. I think this issue is controlled by *Smith v. Pacific Truck Express,* 164 Or 318, 100 P2d 474 (1940). I therefore concur in part and dissent in part.