*Argued January 20, reversed February 2, 1915.*

# VASQUEZ *v.* PETTIT.

(145 Pac. 1066.)

**Release—Fraud—Representations of Material Facts.**

1. A representation by an employer, inducing an employee to release his claim for a personal injury, that medical and hospital bills would be paid by an insurance company, was not a representation of a material fact, and the employee could not complain so long as the bills were in fact paid.

**Trial—Misconduct of Counsel.**

2. The action of the attorney for plaintiff suing for a personal injury in stating on the examination of jurors on their *voir dire* that the damages recoverable would be paid by an insurance company, and in compelling defendant on cross-examination to state that sums paid by him to plaintiff for a release had been repaid by an insurance company, was reversible error as rendering the jury careless as to the amount of the verdict on the theory that defendant was protected from liability.

> [As to effect of misconduct of counsel at trial, see note in 100 Am. St. Rep. 690.]

**Pleading—Issues—Denial.**

3. Where an employer, in an action by an employee for personal injuries, relied on a release, allegations of the reply that the employer disregarded his promise to employ the employee, forming a part of the consideration of the release, and discharged the employee, were allegations of new matter, and under Section 95, L. O. L., controverted as on direct denial.

**Release—Failure of Consideration—Effect.**

4. Where an employer, in an action for injury by an employee, relied on a release from liability, the employee alleging and proving that the promise by the employer to employ the employee, forming a part of the consideration for the release, had been breached, was not confined to an action for the breach, but could sue for the injury.

From Multnomah: William N. Gatens, Judge.

Department 1.    Statement by Mr. Chief Justice Moore.

This is an action by L. Vasquez against J. Pettit, doing business as the Pettit Feather & Bedding Company, to recover damages for a personal injury.  The complaint charges in effect that on May 1, 1911, the plaintiff was engaged in operating for the defendant a carding machine, used in picking hair with which to fill mattresses, and while thus employed his right hand was caught between cylinders of the machinery and so injured as to necessitate amputation.  The negligence alleged is a failure properly to guard the machine, or to provide it with a belt-shifter, or to inspect the instrumentality, or to instruct the plaintiff, or to have prompt communication between the operator of the machine and the engineer in charge of the motive power.  The answer denied the negligence alleged, and for further defenses averred: (1) That the plaintiff knew the danger incident to operating the machine and assumed the risk; (2) that aside from his carelessness the injury resulted from the negligence of fellow-servants; (3) that the hurt was caused by the plaintiff's carelessness whereby the accident was unavoidable; and (4) that the defendant on July 22, 1911, settled and compromised with the plaintiff, giving him the sum of $535 and also assuming the payment of the surgeon's charges and the hospital expenses incurred in caring for the plaintiff, who upon the receipt of the money executed to the defendant a release discharging him from all liability by reason of the accident and injury.  The averments of new matter in the answer were put in issue by the reply, which

further alleged, in substance, that at the time stated the plaintiff received $400 from the defendant, who then informed him that an insurance company would pay such charges of the doctor and bills at the hospital; that the defendant thereupon requested the plaintiff to sign an instrument in order to show the receipt of the money, so as to prove that the sum paid had been disbursed, saying that the amount was intended to cover wages for the past, and for a reasonable future time; that the defendant then promised and agreed with the plaintiff that he could work for the company as long as it continued in business; that if such writing is a release the plaintiff was induced to sign it by the defendant's fraudulent representations to him that it was only a receipt; that such statements were false, and so known by the defendant when he uttered them, and they were made for the purpose of inducing the plaintiff to sign the writing; that he is a Spaniard and unable to any extent, to speak, read or write the English, in which language the instrument was written, and no copy thereof was delivered to him; that desiring to continue in the work in which he was engaged when hurt, and realizing the difficulty which he would encounter in securing other employment by reason of the loss of his hand, and relying upon the defendant's representations and agreement, he signed the writing, supposing it was a receipt; that he did not intend to sign a release and did not believe he had done so; that he never received any money in compensation for his injuries and suffering; and that since he was hurt he has endeavored to render valuable services for the defendant, who, disregarding his promise and agreement, discharged the plaintiff and refused longer to employ him. Based upon these is-

sues, a trial was had resulting in a judgment for the
plaintiff in the sum of $4,000, and the defendant ap-
peals.                    '                    REVERSED.

For appellant there was a brief over the names of
*Messrs. Senn, Ekwall &Recken* and *Messrs. Moser &
McCue,* with an oral argument by *Mr. Frank S. Senn.*

For respondent there was a brief over the names of
*Messrs. Davis & Farrell* and *Mr. Wilber Henderson,*
with an oral argument by *Mr. Wilfred E. Farrell.*

Opinion by MR. CHIEF JUSTICE MOORE.

1. No motion appears to have been made to strike
from the reply the averment as to the defendant's al-
leged representations with respect to the payment of
the medical and hospital bills by an insurance com-
pany. It will be remembered that the answer states
the defendant assumed the payment of these obliga-
tions. Whether or not he informed the plaintiff that
an insurance company would advance or pay the money
for that purpose is unimportant, for the source from
which such debts were to have been paid was not the
statement of any material fact, and it was unneces-
sary to move to strike the averment from the reply.

2. The plaintiff's counsel in examining prospective
jurors on their *voir dire* was premitted, over objec-
tion and exception, to state that the damages which
their client had suffered were to be paid by money
furnished by an insurance company and each person,
when he entered the jury-box, was asked if he was
acquainted with the agents in Portland, Oregon, of such
company. The defendant, as a witness in his own be-
half, testified that he had paid the plaintiff, as wages,
from May 1, 1911, the time he was hurt, to July 22d

of that year, when he resumed work, $135; that as a compromise and settlement of the damages which had been suffered he had give him $400; and for his surgical operation, medical attention, hospital dues, etc., he had paid $268.85, making $803.85. On cross-examination the defendant was compelled, over objection and exception, to state that such sum had been repaid him by an insurance company under a policy which protected his business against liability for accidents to employees. It is contended that errors were committed in these particulars.

In the trial of this cause there appears to have been an intent at every convenient opportunity to establish the fact that the defendant was protected from liability to respond in damages for injuries to his employees by a policy of indemnity insurance. As such proof, in personal injury cases, might have a tendency to render the jurors careless as to the amount of their verdict, the rule is universal that a willful attempt to establish such fact constitutes reversible error: *Tuohy* v. *Columbia Steel Co.*, 61 Or. 527 (122 Pac. 36); *Putnam* v. *Pacific Monthly Co.*, 68 Or. 36 (130 Pac. 986, 136 Pac. 835, Ann. Cas. 1915C, 256, 45 L. R. A. (N. S.) 338); *Cameron* v. *Pacific Lime & Gypsum Co.*, 73 Or. 510 (144 Pac. 446).

The purpose in introducing the testimony complained of comes within the specification named, and, an error having been committed as alleged, it follows that the judgment must be reversed.

3, 4. In view of the conclusion thus reached, it is deemed important to consider another feature of the case. The testimony of the plaintiff, as given by an interpreter, is to the effect that he had been employed by the defendant several years and placed implicit confidence in all declarations that he made; that after

the injury the defendant promised to give him employment in the factory as long as he continued to operate it; and that, relying upon such promises, he signed the writing supposing it was a receipt for the money and to show the insurance company what sum he had received. Julius Gonzales, the plaintiff's brother-in-law, interpreting his answer to the question, "There was something said about a job, too, when he signed it, wasn't there?" replied:

"He said that after he signed that paper, why, he told Mr. Pettit he wanted a recommendation for a life job, and Mr. Pettit said, 'No, I will give him a job that will last him for fifteen years for all he knows, or as long as he remained in the business.' "

This action was commenced May 1, 1913, just two years after the injury, and during most of the interim the plaintiff continued in the defendant's employ. It will be kept in mind that the reply avers that the defendant, disregarding his promise, discharged the plaintiff and refused longer to employ him. This allegation is deemed to be controverted by the defendant as upon a direct denial: Section 95, L. O. L. At the trial herein the defendant's counsel did not concede that the alleged promise to employ the plaintiff was ever made, or that the service which he rendered after the injury formed any part of the consideration for the execution of the release. In this state of the case it would be improper summarily to dismiss this action and to hold that for a failure of a part of the consideration the plaintiff's proper remedy was an action to recover damages for a breach of the agreement, and to turn him out of court because the money which he received had not been returned or offered to be repaid before this action was commenced.

The cause will therefore be remanded in order to form new issues or for a trial upon the pleadings already filed as the parties and the court may determine.

.        REVERSED.

MR. JUSTICE MCBRIDE and MR. JUSTICE BENSON concur.

MR. JUSTICE BURNETT concurring in the result.