Argued November 19, affirmed December 22, 1936

# HORNBY *v.* WIPER

(63 P. (2d) 204)

Department 2.

*Arthur I. Moulton,* of Portland (George M. Roberts and Wm. M. McAllister, both of Medford, on the brief), for appellant.

*Don R. Newbury,* of Medford (Newbury & Newbury, of Medford, on the brief), for respondent.

BEAN, J. It is shown by the complaint that the Redwood highway on Hays hill in Josephine county, Oregon, is paved and is 18 feet in width; that on Novem-

ber 26, 1934, at about 9:30 o'clock a. m., plaintiff was driving his 1927 Model T Ford automobile in a westerly direction up Hays hill on the Redwood highway at a speed of approximately 15 miles per hour, and was on his right half of the highway; that defendant was likewise driving his Ford V 8 on said hill in a westerly direction up said Hays hill to the rear of plaintiff at a greater speed than plaintiff was traveling and gradually approached and overtook plaintiff's car and negligently, carelessly, and recklessly attempted to pass to the left of plaintiff's car at a blind turn on said highway where the highway was visible ahead for a distance of not more than 265 feet; that at said time there was another automobile coming down said hill in an easterly direction, which appeared in sight around said blind turn a short distance in front of plaintiff's car before defendant's car had passed clear of plaintiff's car; that with the apparent purpose of avoiding a collision between defendant's car and the car coming down the hill, defendant willfully and deliberately turned his car to the right and into the left forward side of plaintiff's car, knocking plaintiff and his car off the grade and down a steep incline into the bottom of a canyon approximately 30 feet below, severely injuring plaintiff; that defendant attempted to pass when such left side of the highway was not clearly visible and was not free of oncoming traffic for a sufficient distance ahead to permit such overtaking and passing in safety; that defendant drove his automobile at a greater speed than was reasonable and prudent, having due regard to the traffic, surface and width of the highway and other conditions existing at the time and place of said attempted passing; that by reason of said gross negligence plaintiff was injured as follows: He sustained fractures of the fourth, fifth, sixth and seventh ribs on the right side; suffered a severe blow in the

right hip and pelvic region and in the region of the right sacroiliac joint and the lumbosacral joint and for more than six months after the accident he suffered very severe and extremely painful right traumatic sciatic; suffered internal injuries consisting in part of a small epigastric or ventral hernia, and decided muscle and ligamentary tears in the region of the end of the ninth and tenth right ribs; suffered severe bruises on the right and left legs and numerous contusions and abrasions about his body, with a deep cut just below the left knee; he sustained a severe blow on the right side of the head and on the back of the head, and suffered extreme shock to his nervous system and sustained physical and psychic traumatism. He remained in the Josephine General Hospital for a period of seven weeks, where he was confined to his bed continuously for four weeks and ever since has been receiving treatments for his said injuries, and as a result of said injuries he has suffered and will continue to suffer urinary disturbances; that as a result of the injuries to his left knee he suffered severe blood poisoning in his left leg commencing May 1, 1935, until July 1, 1935, for which he received medical care and treatment. Plaintiff alleges further that prior to the accident he was in excellent physical health and was strong and robust; that by reason of said injuries plaintiff incurred expenses for medical care, X-rays, examinations and attendance, and for medicines, nursing, hospitalization, transportation for treatments and examinations, and other expenses, and will in the future likely incur additional expenses in caring for his condition, brought about by said injuries; that in consequence of the said gross negligence, and willful, wanton and malicious misconduct of the defendant, plaintiff has been injured and damaged in the sum of $25,000. For a fur-

ther and separate cause of action plaintiff claims damages to his Model T Ford car in the sum of $200.

Defendant moved to strike the words "wantonly", "gross negligence, wantonness", "and maliciousness", "willful" and other similar words where they appear in the complaint. The motion was overruled by the court.

Defendant answered denying the negligence charged, setting forth a separate defense that he attempted to pass plaintiff's automobile in a careful and prudent manner; that while he was so attempting to pass, the automobile of a third party, mentioned in the complaint, approached at a dangerous and reckless rate of speed and that in the emergency so created defendant misjudged the distance necessary to clear the automobile of plaintiff and turned to the right before his automobile was entirely beyond and ahead of plaintiff's automobile, thus striking plaintiff's automobile. A reply was filed putting the new matter of the answer in issue.

It is stated in defendant's brief: "Upon the trial, there was evidence tending to sustain the charge of simple negligence." Defendant contends there was an entire lack of evidence tending to justify the denunciation of the act as willful or wanton. Plaintiff testified that he was proceeding up the heavy grade known as Hays hill at a point where the view ahead was about 265 feet and was going about 15 miles per hour at the extreme right edge of the road; that defendant's car attempted to pass him and while doing so the opposing car "came around the corner regular whizzing;" that defendant's car side-swiped his in attempting to avoid a collision with the opposing car, substantiallly as alleged in the complaint.

Defendant's testimony as to the happening of the accident was not materially different from that of plaintiff. He said he could see the road ahead of him and the road on the far side of the canyon and he thought the road was clear for a quarter of a mile and he felt perfectly safe in attempting to pass. He did not observe that the road made a curve to the left and that there was a blind section between the road directly ahead of him and that across the canyon, and that therefore he thought no car was approaching which could possibly interfere with his passing; that when he was alongside plaintiff's car the third car approached at a very high rate of speed, so high that it swung across the highway and presented the imminent danger of a three-way headon collision involving all three of the cars, and in the emergency he attempted to pass as closely to plaintiff's car as he could and thought he had cleared it.

■ The photographs in the record plainly show that the place where defendant was said to have attempted to pass plaintiff's automobile is very close to a perfectly blind curve. The defendant, in attempting to pass plaintiff's car near an extremely sharp blind turn on one of the main highways of the state on a steep mountainside where the traffic was expected to be heavy, as shown by the testimony, warranted the jury in finding that he was negligent.

At the close of all the testimony the defendant moved the court to withdraw the issue of punitive damages from the jury. The court reserved the final ruling upon this question until his instructions to the jury, when he instructed the jury to disregard both the claim for punitive damages and also the claim for the automobile and consider only the claim for general damages, to wit, physical injuries, with the physical disability

that may have resulted and any pain and suffering that may have resulted therefrom, and such as with reasonable certainty will follow and continue into the future, and including any reasonable expenses that he has been to, doctor's bills, hospitalization and expenses of that character necessarily resulting from any injuries he may have suffered. "However, as I said, the claim for punitive damages and the claim for damage to the automobile will be eliminated."

■ The defendant assigns as error the denying of defendant's motion to withdraw the issue of punitive damages from the consideration of the jury. There is a wealth of argument and authority cited upon the question of exemplary damages. The court having eliminated the question of punitive damages from the consideration of the jury, as we deem it, it is no longer an important question in this case. It was appropriate for the court to hear the testimony, as it did, before ruling upon the question, and we do not think the rights of the defendant were prejudiced by postponing such ruling until the instructions were given to the jury. There was no error in the court's refusing to strike the adjectives referred to in plaintiff's complaint, or the portions wherein the plaintiff sought recovery of punitive damages: 1 Randall's Instructions to Juries, 646, § 350; *Sather v. Giaconi,* 110 Or. 433 (220 P. 740).

After the accident the defendant took the plaintiff in his car to Camp Kerby at Selma. Plaintiff stated, without objection, that:

"I asked him where he was going and he said he was going to Gold Beach. I says: 'I live at Harbor. You can take me home.' He says: 'Yes.' I says: 'What's your business?' and he says: 'In the insurance business.'

&ast;  &ast;  &ast;  &ast;  &ast;

"He asked 'What business are you in?' I said 'I'm just over there making a few improvements—going to fix up a camp ground.' "

■ At the trial plaintiff's counsel stated that defendant was in the insurance business. Defendant complains that this statement was not competent, that it inferentially advised the jury that defendant was protected by liability insurance. We do not so construe the testimony or the statement of counsel. The court instructed the jury that it is possible sometimes the business a man is engaged in may throw some light on the weight to be given his evidence, or something of that kind, "but other than that the business that either of them was in has no bearing upon any of the issues in the case and is not to be considered as being of any consequence one way or the other." The fact that the defendant was in the insurance business would not indicate he was protected by liability insurance. The point was not well taken.

Defendant assigns error of the court in giving to the jury the following instructions, over the objection and exception of the defendant:

"Now before going into the law that is involved here, I think it may be wise to read to you certain sections of the automobile law, the Act of 1931 wherein our automobile law was revised somewhat, particularly certain sections that are called the 'Rules of the Road,' insofar as they are applicable in this case. There are certain general rules for the government and conduct of parties using the highways and driving motor vehicles.

&ast;  &ast;  &ast;  &ast;  &ast;

"I am reading these rules to you for their applicability, insofar as they may be applicable not only to one party but each and all of the three parties whose

presence on the highway in any manner concurred in the unfortunate results that are in controversy here.

\* \* \* \* \*

" 'The driver of an overtaken vehicle shall give way to the right in favor of the overtaking vehicle on suitable and audible signal—suitable and audible signal, and shall not increase the speed of his vehicle until completely passed by the overtaking vehicle.'

\* \* \* \* \*

" 'The driver of a motor vehicle traversing defiles, canyons or mountain highways shall hold such motor vehicle under control and as near the right hand side of the highway as reasonably possible, and upon approaching any curve where the view is obstructed within a distance of 200 feet along the highway shall give audible warning with a horn or other warning device.'

"It may be a question whether the last section is involved in this case or not."

■■ The reading to the jury by the trial court of the statutory rules of the road was as favorable to the defendant as it was to the plaintiff. If a portion of the same having to do with sounding of a horn on a mountainous highway was not supported by the issues or the evidence, it was not prejudicial to defendant. Where the instructions considered as a whole are substantially correct and fairly submitted the issues to the jury and could not have misled the jury to the prejudice of defendant, the judgment will not be reversed because some instructions considered alone may be subject to criticism: *Dockery v. Gardner,* 141 Or. 64 (15 P. (2d) 481); *State v. Selby,* 73 Or. 378, 386-389 (144 P. 657); *Yarbrough v. Carlson,* 102 Or. 422 (202 P. 739); *Schaller v. Pacific Brick Co.,* 70 Or. 557 (139 P. 913); *Kitchel v. Gallagher,* 126 Or. 373, 383 (270 P. 488); *Miami Quarry Co. v. Seaborg Packing Co.,* 103 Or. 362, 379 (204 P. 492).

■ The court also instructed the jury, in part as follows:

" 'Any person who drives any vehicle upon a highway carelessly and heedlessly in wilful or wanton disregard of the rights and safety of others, or without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property, shall be guilty of reckless driving and upon conviction shall be punished,' and so forth.

\*    \*    \*    \*    \*

" 'The driver of a vehicle shall not drive to the left side of the center line of a highway in overtaking and passing another vehicle proceeding in the same direction unless such left side is clearly visible and is free of oncoming traffic for a sufficient distance to permit such overtaking and passing to be completely made without impeding the safe operation of any vehicle approaching from the opposite direction or any vehicle overtaken, nor shall the driver of a vehicle in any event drive to the left side of the center line of a highway when approaching the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of five hundred feet.' "

The uncontradicted testimony indicates that the defendant violated this statute last quoted and the jury was warranted in so finding. If he did then he was guilty of negligence as a matter of law.

■ Defendant predicates error upon the failure of the court to give his requested instruction No. 2 to the effect that if negligence of a third person was the direct proximate cause of the injury complained of plaintiff could not recover; also his requested instruction No. 3, which reads as follows:

"Applying the instructions which I have given you defining 'proximate cause', particularly to this case, I instruct you that if the defendant Wiper in attempt-

ing to overtake and pass plaintiff's car attempted as a reasonably prudent man would have done under the circumstances, and if to a reasonably prudent man it would not have appeared likely that his act in attempting to overtake and pass plaintiff's car was likely to inflict injury upon any other person, and while he was so doing that act another vehicle was so negligently driven that the negligence of that other vehicle was the direct and proximate cause of injury to the plaintiff, and defendant's act merely furnished the condition or gave rise to the occasion by which the injury was made possible, and if the act of the third person intervened and directly and proximately caused the injuries complained of by plaintiff, the defendant would not be liable to plaintiff for his injuries."

Upon these phases of the case, we think the court fully instructed the jury and covered the instructions requested, while in different language, as favorably to the defendant as he could reasonably expect.

■ The court, among other things, charged that if defendant here was guilty of negligence it was not actionable unless that negligence was the proximate cause of the injuries or some of the injuries of which plaintiff complains in this case. The court, referring to the automobile coming from the opposite direction, instructed the jury:

"Now, you will have to determine whether or not when the defendant attempted to pass the plaintiff's car he did any act which was negligent in the first instance: in other words, whether or not he did something a person of ordinary care and prudence would not have done under the then existing conditions and circumstances. If he did not perform any act of negligence in that regard, then, of course, that resolves the case in favor of the defendant. If he did perform any act of negligence there and in the manner alleged in the complaint, then, of course, you must go further and consider other factors and determine whether or not

that negligence was the proximate cause of any injuries that resulted to the plaintiff. In the first place, if you find that the defendant was not negligent, I said that would resolve the matter in favor of the defendant, although that is not perhaps altogether true, because even if the defendant were not guilty of negligence in the first instance in attempting to pass the car, when this emergency developed from the condition attending the oncoming car that was coming down the grade, then there developed an emergency or condition which called on the defendant to exercise some degree of care and judgment in order to meet the emergency, and it thereupon became the duty of the defendant to exercise ordinary care and judgment and caution in order to avoid—that is for his own protection, and in order to avoid a collision with the oncoming car, so that if he was not guilty of negligence in the first place but failed to exercise ordinary care in avoiding the contingency or this emergency that developed then he might be liable for the consequences of failing to exercise ordinary care to avoid that contingency, but, on the other hand, if he was guilty of negligence in the first instance in attempting to pass the plaintiff's car and in the manner in which he was attempting to pass it and at the time and place at which he attempted to pass it, if that were negligence in the first instance, then he cannot avail himself of this defense of sudden emergency.

"Now in regard to sudden emergency: A person who finds himself so confronted is not liable for the exercise of that kind or degree of judgment which he would be called upon to exercise under conditions where he had time to mature his judgment and to give mature consideration to the form of his judgment. In a sudden emergency, he is placed in a situation where he must act perhaps suddenly and does not have time to pause and consider just what he ought to do, and as he looks back over it afterwards he may see where he could have used better judgment if he had had time to consider, but in view of the fact that he must act perhaps suddenly and without time to consider all he must do is to exercise that degree of judgment and care which an ordinarily

prudent person would have exercised under the same conditions, and he is not called upon to exercise a greater degree of care and caution than such a person would exercise. If he does that, then he is absolved from the responsibility that would result from error of judgment in the emergency. If he does not exercise that degree of care, then he is not absolved from the error of judgment in the emergency."

In *Dickson v. King*, 151 Or. 512, 515 (49 P. (2d) 367), the opinion reads:

"It is well established that a person cannot escape liability for the negligent operation of an automobile on the ground that he acted in an emergency if it appears that the emergency arose through his own negligence." [Citing authorities.]

We have carefully read all of the charge of the court to the jury and think that the issues in the case were plainly and fairly submitted to the jury.

The trial court saw no appeal to the passion and prejudice of the jury in the trial of the case and we discover none.

After a careful examination and consideration of the record, we find no reversible error therein. It follows that the judgment of the circuit court must be affirmed. It is so ordered.

RAND, BAILEY and ROSSMAN, JJ., concur.