Argued September 10, reargued October 30, 1963, affirmed
February 13, petition for rehearing denied March 18, 1964

## JOHNSON *v.* HANSEN ET AL

389 P. 2d 330
390 P. 2d 611

*Bruce Williams,* Salem, argued and reargued the cause for appellants. With him on the briefs were Otto R. Skopil, Jr., Al J. Laue, and J. William Stortz, Salem.

*M. M. Orona,* Lebanon, argued and reargued the cause for respondent. On the brief were Morley, Thomas & Orona, Lebanon.

Before McALLISTER, Chief Justice, and ROSSMAN,

PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

This is an action for damages for injuries sustained in an automobile collision. The jury found for the plaintiff and the defendants appeal from the judgment.

The accident occurred on a two-lane highway. Plaintiff was proceeding south in her own lane of travel. Defendant Robert Hansen, following a school bus, was proceeding north in his lane of travel. The school bus was equipped with flashing stop signal lights, front and rear. These lights flashed on and continued operating for approximately 400 feet before the bus stopped to take on children. Defendant Hansen, in seeking to avoid collision with the rear of the bus, applied his brakes. This act caused the defendants' truck to spin or skid into the plaintiff's lane of traffic. Plaintiff's automobile struck defendants' truck.

The first assignment of error asserts that the trial court abused its discretion in refusing to grant a mistrial during the examination of a prospective juror.

Plaintiff's counsel questioned the first juror on *voir dire* as follows:

"Q Now, do you believe that you have a financial interest in this lawsuit in any way, shape or form, by reason of any effect it might have upon you in your own private cost of living?

(No response.)

"Q In other words, you don't think, for example, that if you gave this woman a large sum of money, you don't feel that directly or indirectly

that sum of money might make your cost of living higher in any way whatever?"

Defendants immediately moved for a mistrial on the ground that plaintiff's counsel had intentionally injected the matter of insurance. The motion was denied, apparently because the trial judge thought the question had been asked innocently.

■■ In the ordinary case, the presence or absence of insurance is not only irrelevant, but the unnecessary injection of the subject into the trial is prejudicial. See *Cameron v. Columbia Bldrs., Inc. et al,* 212 Or 388, 393, 320 P2d 251 (1958). Since the profession knows that questions about insurance normally have no place in the *voir dire* examination of jurors, or in the questioning of witnesses, the problem presented by the mention of insurance comes before this court only in those cases where counsel thought he had some more or less colorable excuse for conduct that otherwise would have been improper and very likely would have furnished ground for a mistrial. The clear cases are not appealed. It is in the questionable cases, then, that this court has repeated its long-standing rule that the decision of the trial court to grant or deny a mistrial will not be disturbed unless there was a manifest abuse of discretion. The rule is the same whether the irrelevancy concerns insurance or other extraneous matter likely to prejudice the offended party. See *Martin v. Dretsch,* 234 Or 138, 380 P2d 788 (1963).

■ In the case at bar there was no preliminary showing of any fact that might have made relevant an inquiry concerning bias arising out of the relationship of verdicts and insurance premiums. Where a line of questioning obviously is going to open up

prejudicial speculation, e.g., of a racial, religious, political or other emotionally charged nature, the exploration of which will manifestly incite similar speculation upon the part of listening jurors, counsel must be prepared to show the need which might make such an inquiry relevant, or run the risk of an immediate mistrial. Insurance matters should be handled with the same safeguards. In the case before us counsel did not advise the court of the existence of recent institutional advertising, or of other current propaganda calculated to produce bias upon the part of jurors in the local court. Thus there was no occasion to open up the matter of insurance, whether innocently or with scienter. We hold that the inquiry was improper. Its impropriety, furthermore, was not a matter to be determined in the exercise of judicial discretion. Impropriety is established as a matter of law when the exploration of potentially prejudicial matter before the jury is undertaken without any legitimate reason being offered therefor. Where good cause does exist, the safer practice would be to resolve the problem out of the presence of the jury rather than to indulge in experiments to test the temper of the trial court.

The next question is whether the motion for a mistrial should have been granted. Many times in the trial of a lawsuit counsel will say things which ought not to have been said. It does not necessarily follow that every such blunder must result in a mistrial. It is here that the proper play of judicial discretion is brought to bear upon the question. The court must choose in each instance a remedy that is appropriate. The trial court must see that both parties have a fair trial. If, in the case at bar, the trial court's ruling was arbitrary, i.e., denied the defend-

ant a fair trial, then it should be reversed. If not, it should stand.

We believe that the increment of prejudice in this case was very slight. The improper questions did not obviously carry an insurance label. Jurors sophisticated enough to read insurance into the case were no doubt already aware of its existence in the vast majority of automobile cases. The trial judge was in a good position to sense the subjective elements that made up the atmosphere of that particular jury trial. The burden is upon the complaining party to show some real probability that his right to a fair trial was impaired. No such showing has been made in this case. We are satisfied that the trial court's ruling was within the permissible area. Judicial discretion in such a situation properly balances whatever prejudice might have occurred against all the other relevant factors present in a particular case. The judge must weigh against an inference that prejudice actually resulted any countering influences that arise from his own special knowledge of the conditions in his courtroom. The record discloses no reason to believe that the judge failed to exercise his discretion judiciously in this case. A mistrial could have been granted, but its denial was not an abuse of discretion.

■ A second ground for a mistrial is based upon an objection during plaintiff's closing argument to the jury. The challenged statement was as follows:

"You all know, as a practical matter, that we cannot avoid the consequences of our acts. And if our acts should be neglectful, it doesn't change it by saying we are sorry. How often are we sorry? How many times have you, as mothers— Mr. Rivenes perhaps is a father, and I think we've got one who may be too young—but how many times in raising a family—"

It is improper to address a juror by name. See *Henderson v. U. P. R. R. Co.,* 189 Or 145, 219 P2d 170 (1950). But again, this is a matter of professional ethics. See Rule 18, Oregon State Bar Rules of Professional Conduct. The prejudicial effect, if any, of improper argument is in the domain of the trial court's discretion. A ruling on a motion for a mistrial will not be disturbed unless there is a palpable abuse of discretion. The primary office of the mistrial is to prevent a miscarriage of justice, not to punish pettifogging. We find no abuse of discretion in this assignment.

██ It is finally urged that a mistrial should have been granted on the ground that plaintiff unduly exhibited her distress by crying and clutching her father or some other person in the presence of the jury. As pointed out in *Hays v. Herman,* 213 Or 140, 322 P2d 119, 69 ALR2d 947 (1958), whether a party's emotional outbursts in the courtroom afford the basis for a mistrial will depend upon the facts of the particular case. In that case it was noted that the common pattern running through most of the cases "is to sustain the action of the trial court, because of its superior opportunity to determine whether the weeping, or other display, was prejudicial in a given case." 213 Or at 145. *Cf. Ferguson v. Moore,* 98 Tenn 342, 351, 39 SW 341 (1896), considering tears shed by counsel. In the case at bar, the plaintiff had become mentally incompetent as the result of her injuries, and her conduct in the courtroom was a symptom of her difficulty. There is no suggestion that any improper attempt was made to exploit her distress. We find nothing in the record to cause us to substitute our judgment for that of the trial court concerning the

effect of plaintiff's conduct upon the outcome of the case at bar.

If, in the judgment of the trial court, the cumulative effect of counsel's conduct or his client's conduct in the particulars noted was likely to be prejudicial to the defendants, it would have been proper at any point for the trial court to terminate the proceedings. It likewise would have been proper for the trial court to grant a new trial if, in its opinion, prejudice had been injected. The court also could have taken whatever disciplinary action it considered reasonable and necessary to prevent further misconduct by counsel, if, indeed, there was misconduct. However, even though it would have been perfectly proper to grant a mistrial, it does not follow that refusing to do so was an abuse of discretion. Judicial discretion, in its very nature, admits of considerable breadth in its application. There is nothing about the verdict ($138,000) considered in light of the injuries (permanent disability, brain damage, and disfigurement of a 43-year-old woman) to suggest that the jury was affected by prejudice.

■ Next it is argued that plaintiff violated ORS 485.020 (making it the duty of persons operating vehicles on the highway to stop when meeting or overtaking a school bus which has stopped to receive or discharge school children), and that the violation of the statute constituted contributory negligence as a matter of law. We believe the matter of the plaintiff's negligence, if any, and its causal connection with the collision were properly left to the jury. *Burke v. Olson,* 206 Or 149, 291 P2d 759 (1955). Defendants urge us to overrule *Burke v. Olson,* supra. *Burke v. Olson* correctly interpreted ORS 485.020. There is no reason to overrule it.

Finally, defendants assert that they were entitled to an involuntary nonsuit on the ground that through one of plaintiff's own witnesses it was established that she was negligent as a matter of law. There is no merit in this contention. The question was for the jury.

Affirmed.

DENECKE, J., specially concurring.

The majority opinion holds that the asking of the questions was not prejudicial, either because the jury did not know the question suggested that the defendants were covered by liability insurance, or that if some jurors "did get the message," the trial court had the discretion to determine that the effect of this knowledge was not prejudicial to the defendants. The trial court's remarks made when denying the motion for a mistrial do not clearly indicate the ground upon which it based its ruling. One reasonable interpretation of such remarks is that the trial court decided that the question had not informed the jury that the defendants had insurance. The jurors were not attorneys or judges to whom the innuendo of the question would be obvious. I believe the trial court reasonably could have concluded that the questions did not inform the jury that the defendants had liability insurance. See *Hornby v. Wiper,* 155 Or 203, 210, 63 P2d 204 (1936); *Rundlett v. Director,* 150 Or 658, 47 P2d 848 (1935); *Barbour v. Stahl,* 142 Or 20, 18 P2d 807 (1933). On this basis I concur.

O'CONNELL, J., specially concurring.

The majority opinion appears to proceed upon the assumption that in the voir dire examination counsel for the plaintiff always has the burden of showing

lack of bias and that if he makes inquiry of a juror to discover bias without first obtaining leave of court he runs the risk of a mistrial. According to this reasoning it would make no difference whether counsel had a well-founded suspicion of bias on the part of a juror—the inquiry as to bias is improper unless first cleared by the trial court if the inquiry might create prejudice against the defendant. But, the reasoning continues, an inquiry not cleared with the court may nevertheless be excused if, under all the circumstances of the case, the defendant is not seriously prejudiced.

The requirement that counsel make, in effect, an offer of proof in such cases may be a salutary innovation in the procedure on voir dire. But it affords no help in the solution of cases such as the one before us where consent to the inquiry was not obtained. Where consent is not obtained, upon what basis does the trial court decide whether a motion for mistrial is to be granted? The majority say that the trial court is to exercise its discretion in determining the prejudicial effect of the inquiry. What does the trial court's discretion play upon to make this determination? The court says, "The trial judge was in a good position to sense the subjective elements that made up the atmosphere of that particular jury trial." What are these "subjective elements" having any relevancy to the quantum of prejudice? The opinion states that "Jurors sophisticated enough to read insurance into the case were no doubt already aware of its existence in the vast majority of automobile cases." If this means that most jurors assume that there is insurance coverage in the automobile cases, there would seem to be no reason for the nondisclosure rule. If that is not the court's meaning, how does the trial

judge know whether the particular jury does or does not make the assumption?

Turning to the present case, there were no circumstances which would indicate to the trial court one way or the other whether the question put to the juror had a prejudicial effect. This is another instance, among many, where an appellate court escapes the burden of a problem presented to it by casting the problem in terms of the trial court's discretion without defining the area within which discretionary power is to be exercised.

The question in the present case is not whether there was prejudice to the defendant, but whether the prejudice to defendant resulting from counsel's statement (accepting the hypothesis of the nondisclosure rule) is outweighed by the harm which could result to plaintiff if, by denying him the right to inquire into a prospective juror's interest, a biased juror is selected. In the instant case the trial judge did not proceed upon this basis. The motion for mistrial was denied in the first instance because the trial judge concluded that plaintiff's counsel did not have an evil motive in making the indirect reference to insurance. Although it must be admitted that our previous cases have deemed counsel's motive as a crucial element to be considered by the trial judge in deciding whether to call a mistrial, I am unable to see how counsel's state of mind has any relevancy to the solution of this class of cases.[⊙] A reference to insurance made

[⊙] Examination of jurors: Vasquez v. Pettit, 74 Or 496, 145 P 1066, Ann Cas 1917A 439 (1915).

Examination of witnesses: Sherrick v. Landstrom, 229 Or 415, 367 P2d 432 (1961); Jones v. Imperial Garages, 174 Or 49, 145 P2d 469 (1944); Fogelsong v. Jarman, 168 Or 177, 121 P2d 924 (1942); Wells v. Morrison, 121 Or 604, 256 P 641 (1927); Jones v. Sinsheimer, 107 Or 491, 214 P 375 (1923).

Improper argument: McKay v. Pacific Building Materials Co., 156 Or 578, 68 P2d 127 (1937).

in good faith can be as prejudicial to defendant as a reference made with "evil motive," (whatever "evil motive" may mean in this context).

When, at a later stage in the trial, defendant again moved for a mistrial the trial judge regarded the indirect reference to insurance as nonprejudicial because, considering the severity of the injuries, it appeared to him that the amount of the verdict was within normal limits and he therefore assumed that counsel's comment had no appreciable effect on the jury. I also question this process of judging the prejudicial effect of a statement. I do not think that the equation between injury and the money recovery can be described with sufficient certainty to state that no part of recovery was influenced by prejudice.

If the trial judge's discretion has any part to play in cases involving the alleged disclosure of insurance, it is in determining whether the questions directly or indirectly eliciting information concerning insurance were necessary under the circumstances. Of course, if we should say that plaintiff is always entitled to question freely the prospective juror's possible bias as a result of his interest in the welfare of an insurance company, then there is nothing for the trial judge to decide.[2]

Similarly, no problem would be presented if we should adopt the converse rule absolutely excluding all inquiry with respect to the prospective juror's possible bias in this respect.

But neither extreme is suggested and it is assumed that in some cases plaintiff may legitimately make such inquiry and in some cases he may not. The trial

[2] In some states the plaintiff has this freedom of inquiry. Examples are cited in McCormick, Evidence, P. 357 at footnote 14 (1954).

judge must decide whether the circumstances are such that the possible prejudice to the defendant outweighs the necessity of plaintiff's inquiry as to possible bias and, more important, the necessity for framing the inquiry in the manner in which plaintiff frames it. If there is no reason to believe that the prospective juror has any interest in or connection with an insurance company, it would not be proper to open the questioning by asking him if he held stock in a particular insurance company (e.g., defendant's insurer).[3] It would seem reasonable in such circumstances to require counsel to ask preliminary questions of a more general nature not relating to insurance.[4]

It must be admitted that thus limiting plaintiff in the manner of his inquiry provides him with an imperfect method of discovering possible undisclosed bias. But if the nondisclosure rule is to be maintained it can be done only at the risk of adversely affecting plaintiff's chances of a full disclosure of bias in favor of the defendant. If free inquiry on voir dire were permitted, the nondisclosure rule might just as well be discarded because any reference to insurance thereafter would be inconsequential in assessing its prejudicial effect on the jury. It may be that the solution to the problem is to be found in some device by which jurors can be examined prior to voir dire as to interests which might create bias.[5]

---

[3] Putnam v. Pacific Monthly Co., 68 Or 36, 130 P 986, 136 P 835, 45 LRA(NS) 338 (1913).

[4] Note, 3 Or L Rev 236 (1924).

[5] It is suggested in 52 Harv L Rev 166 (1938) that the entire jury panel be examined under oath prior to the trial of any cases before the panel. The information thus obtained would be available to attorneys with cases before the panel and jurors

Our immediate task is to decide whether there was sufficient necessity for plaintiff to make the inquiry in question and whether it was put in proper form. As I have already pointed out, plaintiff's need to inquire as to bias must be weighed against the probability that the inquiry would prejudice defendant.

On the score of necessity to make inquiry plaintiff points to the campaign waged by certain insurance companies to indoctrinate prospective jurors with the idea that high verdicts mean high insurance rates. Plaintiff's concern in this respect is not without cause. The efforts made to influence future jurors has been the subject of judicial comment. Thus in *Causey v. Cornelius*, 164 Cal App2d 269, 275-277, 330 P2d 468, 473 (1958), it was said:

> "* * * [C]ertain insurance companies in recent years have waged a campaign in the Saturday Evening Post and in Life magazine, designed to reach one out of three potential jurors (more than 70 million persons in all), urging them to be conservative in their verdicts when serving as jurors, —to carry into the jury room the thought of insurance and to consider the impact of large verdicts upon their own insurance premiums. We quote a few such passages taken from the opinion in People ex rel. Barton v. American Automobile Ins. Co., 132 Cal App2d 317, 282 P2d 559: ' "Next time you serve on a jury, remember this: When you are overly generous with an insurance company's money, you help increase not only your own

displaying bias could be excluded without revealing to the remainder of the panel the presence of liability insurance. See also Nilles, The Right to Interrogate Jurors with Reference to Insurance in Negligence Cases, 3 Dak L Rev 406 (1931). The questionnaire device has been successfully used in Wayne Circuit Court in Detroit. See Slough, Relevancy Unraveled Part III, 5 Kan L Rev 675, footnote 495 at 717 (1957).

premiums, but also the cost of every article and service you buy." ' 132 Cal.App.2d at page 319, 282 P.2d at page 560. ' " Your Insurance Premium is Being Determined Now. This could be any courtroom in the country—Behind the locked door, twelve men and women are reaching a verdict involving a defendant protected by a casualty insurance company. What they decide affects your pocketbook. * * Casualty insurance companies have been losing an average of $11 on every $100 of earned automobile liability premiums. More accidents are partly responsible. So are excessive jury awards, rendered by jurors who feel they can afford to be generous with the 'rich' insurance company's money. Actually, jurors who are responsible for awards in excess of what is just and reasonable are soaking *you* by raising insurance rates." ' 132 Cal.App.2d at page 320, 282 P.2d at page 560."⊚

Plaintiff's counsel asserts that he made the inquiry in question because of the probability of this influence. It would be for the trial court, in the exercise of reasonable discretion, to decide whether there was such a probability considering the period of time which had elapsed since the advertisements appeared, the pervasiveness of the advertising, and other simi-

---

⊚ The type of advertising employed by insurance companies is more specifically described in Hendrix v. Consolidated Van Lines, 176 Kan 101, 269 P2d 435 (1954), a case in which plaintiff brought a proceeding against two insurance companies for indirect contempt of court in causing the publication of advertisements in Life magazine and Saturday Evening Post to the effect that excessive verdicts increase insurance premium costs to the public. A similar proceeding was brought in People v. American Automobile Insurance Co., 132 Cal App2d 317, 282 P2d 559 (1955). In the latter case plaintiff produced evidence to show that more than one out of every three potential jurors would see at least one of the advertisements in Life or Saturday Evening Post. The effect of this type of advertising is commented upon in Muehlebach v. Mercer Mortuary and Chapel, Inc., 93 Ariz 60, 378 P2d 741 (1963).

lar factors. The form in which counsel cast the question is unobjectionable. It is difficult to see how he could have disclosed bias arising out of the suspected influence by a question with less innuendo as to insurance coverage.

Looking now at the other side of the scale—the probability of prejudice to defendant resulting from plaintiff's inquiry—can it be said that the inquiry had a prejudicial effect? There is substantial support in the adjudicated cases as well as in the texts and legal periodicals for the view that the mention of insurance has little effect upon the jury's verdict. For example, in *Muehlebach v. Mercer Mortuary and Chapel, Inc.*, 93 Ariz 60, 378 P2d 741, 744 (1963), the court said "the prejudicial content of a reference to liability insurance is largely a thing of the past. And it has, in part, been made a thing of the past by the expenditure of vast sums of money by insurance companies to educate prospective jurors of the claimed relation between large verdicts and insurance rates."

Even without the influence of such advertising it is likely that the average juror would, in most cases, assume that defendant was insured. Wigmore, in advocating the abolition of the nondisclosure rule makes note of this point as follows:

"In the second place, liability-insurance is made compulsory in many States and for certain classes of liability; hence, in such cases the fact of insurance is notorious under the law.

"In the third place, and apart from compulsory insurance, the general prevalence of liability insurance for automobile injuries, is known to the jurors; hence for the law to forbid any disclosure of it in the course of the trial seems to be merely a piece of hypocritical futility." 2 Wigmore, Evidence § 282a at 146 (3d ed 1940).

This theme runs through a number of the cases criticizing the nondisclosure rule. Thus in *Causey v. Cornelius,* 164 Cal App2d 269, 276-278, 330 P2d 468, 472-473 (1958) the court states:

"It is time for a reappraisal of this insurance bugaboo. * * * This insurance rule, built upon the theory of prejudice against corporations and especially insurance corporations, has largely outlived its purpose and its justification.

"* * * * *

"The only justification for the rule excluding (with limitations) evidence of the existence of insurance is the supposition that jurors will be led into excessive verdicts if they become aware of defendant's insurance coverage. Today this is a naive conceit. The use of automobiles has increased so prodigiously since 1903 and compulsory liability insurance, or almost compulsory insurance, such as our own Financial Responsibility Law (Veh.Code, §§ 410-418.5) and Security Following Accident statute (Veh.Code, §§ 419-423.1), has become so common that jurors naturally assume as they enter the jury box that defendant is insured against liability. Years of trial experience have shown it to be commonplace, rather than exceptional, for some juror, when asked on voir dire if he or she had ever been a party to a claim for damages for personal injury or property damage growing out of an automobile accident, to say: 'Yes, but nobody was injured and my insurance company took care of it,' or: 'Yes, but the insurance companies got together and settled the matter.' 5 Stanford Law Review, at 144: 'Even if there is no mention of insurance during the trial, the common knowledge of the jurors that most automobile owners are insured must be considered.' "⑦

---

⑦ "* * * [T]oo much is made of the fact that parties to an automobile collision carry insurance. It is safe to assert that the

I am not advocating that the nondisclosure rule be abolished; I refer to the criticism in the quotations set out above simply to show that the prejudice to defendant is not likely to be very great.

Weighing the competing interests of plaintiff and defendant involved in the disclosure of insurance, having in mind the possibility of bias and the importance to plaintiff of making inquiry to disclose it and considering the relatively slight prejudice to defendant (over and above that which already exists as a result of the jurors' understanding that insurance ordinarily is involved), I believe that the question put by plaintiff's counsel was proper.

---

majority of every jury, * * * comes from families owning cars carrying liability insurance. * * * So long as the insurance is not featured or made the basis at the trial for an appeal to increase or decrease the damages, the information would seem to be without prejudice." Odegard v. Connolly, 211 Minn 342, 1 NW2d 137, 139 (1941).

"* * * [I]n view of the presumptive knowledge on the part of present day jurors that public liability insurance is required to be carried by persons engaged in certain lines of endeavor, as well as the knowledge on the part of jurors that persons of business prudence and discretion often carry such insurance, the present day tendency is towards the relaxation of the strictness of the rule * * *." Takoma Park Bank v. Abbott, 179 Md 249, 19 A2d 169, 176 (1941).

"* * * [I]t seems likely that if they do think of it, jurors assume in every automobile case that some financial responsibility exists over and above defendant's ability to satisfy a judgment.

" '* * * [W]hen we consider the ways in which the fact of insurance may be properly disclosed in evidence or suggested at the beginning of the trial upon the examination of jurors, and the fact that insurance has become usual rather than exceptional, it seems likely today that in nearly all cases the jury will either be informed of the fact of insurance or will consciously assume that defendant is so protected. * * * McCormick, Evidence, § 168, at p. 357 (1954).' " Runnacles v. Doddrell, 59 NJ Super 363, 367-368, 157 A2d 836 (1960).

## ON PETITION FOR REHEARING

Williams & Skopil and Al J. Laue, Salem, for the petition.

Before McALLISTER, Chief Justice, and ROSSMAN, PERRY, SLOAN, O'CONNELL, GOODWIN and DENECKE, Justices.

GOODWIN, J.

On petition for rehearing the defendants urge that we erroneously disposed of certain of their assignments of error.

In the original opinion we said that the plaintiff's negligence, if any, and its causal connection with the collision were properly left to the jury. Contributory negligence had not, however, been submitted to the jury. In attempting to abbreviate our discussion of several assignments of error which we deemed to be of secondary importance, we not only obscured our meaning but unfortunately rekindled in the defendants a vain hope that the judgment might yet be reversed.

We meant to say first that the defendants' several assignments of error in which they contended that the plaintiff was guilty of contributory negligence as a matter of law were without merit. The defendants were contending, *inter alia,* that there should have been a directed verdict in their favor. On that score, we should have said merely that there was no occasion for a directed verdict for the defendants.

There were other assignments of error, however,

which challenged the refusal of the trial court to submit to the jury the defendants' various specifications of contributory negligence. The defendants alleged that the plaintiff was negligent with respect to speed, lookout, and control. There were also two specifications of contributory negligence in failing to stop for the school bus. One such allegation attempted to charge the plaintiff with negligence at common law. The other charged a violation of ORS 485.020 and thus attempted to allege contributory negligence as a matter of law. The trial court withdrew all the above specifications of contributory negligence from the jury. There was no error in refusing to submit the issue of contributory negligence.

It is true that neither the plaintiff nor the defendant stopped for the school bus. It does not follow, however, that this undisputed fact made a question for the jury on the plaintiff's contributory negligence. Upon this point *Burke v. Olson,* 206 Or 149, 291 P2d 759 (1955), is controlling. There we held that whenever any person would claim a right arising out of a statutory enactment, he must bring himself within the purview of the act.

There is nothing in the record of the case at bar which gives the defendants the right to set up as a defense for their negligence a statute that requires a motor vehicle operator to stop upon meeting or overtaking a school bus that is loading or unloading children. The provisions of ORS 485.020 had no operation as between these parties. There was no breach by the plaintiff of any statutory duty owed either to herself or to the defendants. Cf. *Henthorne v. Hopwood et al,* 218 Or 336, 338 P2d 373, 345 P2d 249 (1959), 39 Or L Rev 68 (1959), 40 Or L Rev 285 (1961), where the jaywalking pedestrian was in violation of an ordi-

nance specifically intended to prevent the very kind of accident that occurred.

There was likewise in the case at bar no evidence of common-law contributory negligence on the part of the plaintiff *vis a vis* the defendants. As far as the record shows, the plaintiff was driving on her own side of the road at a normal rate of speed when she was struck head-on by the defendants' truck. Apart from the admitted fact that she failed to stop for the school bus, there is no evidence that the plaintiff's driving was in any particular subject to criticism. Her fault, if any, in failing to stop for the bus was no violation of any duty owed the defendants, or to any one in their position. It does no good to say that the statute prescribes a "standard of care" without giving attention to the kinds of harms to be guarded against. A failure to act in a particular manner, whether characterized as negligence as a matter of law or as common-law negligence, gives rise to no legal liability unless the party claiming a breach of duty can show that his claim is within the scope of such duty. See 2 Harper & James, Torts 1018, § 18.2 (1956).

Petition denied.